## RACHELS & WIFE *et al. vs.* WIMBISH.

Testator, by his Will, gave to his wife, for life, the plantation whereon he lived, and a tract of land adjoining, and fifty negroes, to be selected by her from all his negroes; provisions enough for one year's support; a sufficient number of mules, horses, hogs, cattle, wagons, household and kitchen furniture, necessary to keep up said farm; and after her death to be divided between his daughter and her children. All the balance of his estate of lands, negroes, money, choses-in-action, and everything else left after the payment of debts, legacies and provisions made for his wife, he gave to his daughter for life, and at her death to be equally divided among her children. The executor kept up the farm and business of testator, in the condition in which he left it, for the year after testator's death. On a bill filed by the executor for instruction as to disposition of the income of that year, there being debts. *Held,*

1. That the bequest to the widow was specific, and that the widow was entitled to that part of the income which grew out of the employment of her part of the estate, under the will, in its production from the death of the testator.

2. That the daughter, under the residuary clause, was entitled to the clear residuum after the payment of debts and legacies from the estate, as left by the testator, and the income on such residuum from the death of the testator.

In Equity, in Troup Superior Court. Decision by Judge BULL, at the May Term, 1860.

On the 18th of December, 1858, Nathan Truitt made and published his will, and in a short time after the execution of the will, the testator died, leaving the same in force.

The first item of the will gives direction as to the testator's burial.

The second item directs that all the just debts of the testator be paid, as soon after his death as circumstances will permit, with a request that his executors use such discretion in so doing as will be best for the interest of the estate.

The third item provides for the comfort and support of some old and faithful slaves of the testator.

The fourth item is in these words: "I give and bequeath to my beloved wife, Elizabeth Truitt, the place and plantation where I now live, known as the Fannin place, and a small tract of land, bought by me from Samuel Akers, adjoining it, together with fifty negroes, to be selected by her from my negroes; also provisions sufficient for one year's support; a sufficient

number of mules, horses, hogs, cattle, tools, wagons, household and kitchen furniture, necessary to keep up said farm, which said plantation, tract of land, negroes and other property, I give and bequeath to my said wife, for and during her natural life; and after her death, I direct that after the payment of one thousand dollars out of it, to my nephew, James Truitt, the balance and remainder of it shall be equally divided between my daughter, Elizabeth Willis, and her children, the thousand dollars to be paid, after the death of my wife, to the said James Truitt, as soon as it can be done without injury to the balance of said property thus given to my wife as aforesaid, and which said thousand dollars, to be paid as aforesaid, I give and bequeath to my said nephew, James Truitt, absolutely."

The fifth item is in these words: "All the balance and remainder of my property, of every description, lands, negroes, money, choses-in-action, accounts and everything else, left after the payment of debts and legacies above specified, and the provisions made for my wife, I give and bequeath to my said daughter, Elizabeth Willis, for and during her natural life, free from the debts, contracts and liabilities of any husband she may have; and after her death, I direct that said property, together with the natural increase thereof, shall be equally divided among the children of the said Elizabeth Willis, share and share alike."

The last item nominates William D. Alexander and Hezekiah Wimbish, executors of the said will.

The will was duly proved and recorded, and Hezekiah Wimbish, alone, qualified as executor thereof, and assumed the execution of the same.

In executing said will, under the direction given him therein, the executor proceeded to collect the debts due to the estate, and sell the perishable property, and a tract of land in Meriwether county, in order to pay off the debts against the estate, and the pecuniary legacies given by the will; and finding them insufficient for that purpose, he obtained an order of the Court of Ordinary, granting him leave to sell twenty-four negroes of said estate, to raise funds to pay off said debts and specific legacies. The executor also kept all the property of the testator together, as it was left at his decease, and worked it the first year after the testator's death, the gross income and profits of which amounted to about the sum of ten thousand dollars.

Before the day appointed for the sale of the negroes, the executor was advised that, by the terms of the will, he could not sell said negroes for the purpose of paying the debts of said estate and the specific legacies, unless the crops, income and profits of the estate, made during the first year after the testator's death, were insufficient for that purpose.

On the other hand, the tenant for life of the residuum of said estate, under the will, insisted that the debts and specific legacies must be paid out of the corpus of the estate, and that such life tenant was entitled to the income and profits of the residuum, from the death of the testator.

Mrs. Elizabeth Truitt also insisted that she was entitled to the income and profits of the property bequeathed to her, from the time of the testator's death.

Under these circumstances and conflict of claims, the executor filed his bill in equity asking instruction as to the construction of said will, and as to what disposition he should make of the crops, profits and income of the estate, and whether he should pay it over to the said Elizabeth Truitt and Elizabeth Willis, the life tenants, or whether he should apply the same to the extinguishment of the debts against the estate and the specific legacies given by the will.

Mrs. Elizabeth Willis intermarried with Milton H. Rachels, and a guardian *ad litem* was appointed to represent the children of Mrs. Willis, who are the remaindermen, of the residuum after her death.

The Court below decided that the income of the estate, kept together and worked by the executor during the first twelve months after the testator's death, forms a part of the assets of said estate in his hands, and is primarily liable for the payment of the debts against the estate, and the specific legacies bequeathed by the will, and directed a decree accordingly.

This decision is the error complained of in this case, and a reversal of which is now asked.

B. H. HILL, for the plaintiff in error.

H. O. STANLEY & G. A. BULL, for the defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

The matters in controversy grew out of a construction of the will of Nathan Truitt, who died in possession of a considerable estate, consisting of lands, one hundred and fifty negroes, and other personal property, all of which he disposed of by his will. To his wife, Mrs. Elizabeth Truitt, he gave, for life, a tract of land, and fifty negroes to be selected by herself from his whole stock; provisions enough for one year's support; a sufficient number of mules, horses, hogs, cattle, wagons, household and kitchen furniture, necessary to keep up said farm, and after her death—and the payment of $1,000 out of the same to his nephew—to be divided between his daughter, Mrs. Elizabeth Willis, and her children. All the balance of his estate, of lands, negroes, money, choses in action, accounts, and everything else left after the payment of debts, legacies and provisions made for his wife, he gave to his daughter, Mrs. Willis, for life, and at her death to be equally divided between her children.

The executor kept up the farm, after his death, for the year 1859, in the condition in which it was left by the testator, and realized from its use or profits of that year, some $10,000; and feeling himself empowered as to the disposition of such profits, filed this bill for instructions.

The question made by it for our determination is, whether the income, arising from the employment of the property after the death of the testator, shall be applied to the payment of debts and legacies, for which it is necessary, to prevent a sale of some of the negroes, and to that extent increasing the corpus of the residuum, or shall it be paid the life tenants in proportion to their resepective interest in the estate under the will?

1. As to that of the widow, Mrs. Truitt, we think it very clear that the interest she takes under the will is very specific, that is, that the life estate in the fifty negroes, and land and personal propery, is a specific legacy; for the land, negroes and other personal property were to be taken in the form in which it was left by the testator.

It is well settled that a specific legacy, with its increase and emoluments, is specifically appropriated by the operation of the will for the benefit of the legatee, from the death of the testator, so that interest is computed in them from the death of testator. Whatever interest accrues on them from the death of testator, as interest, rent, hire, or any other

form of profit, belongs to the legatee. *Rob. vs. Leg.* 188. *Sleech vs. Thorington,* 2 *ves Sr.* 563. *Barrington vs. Tristram.* 6 *Ves* 345. *Apries vs. Apries.* 1 *Ves. & Bea.* 364. *Graybill vs. Warren.* 4 *Geo.* 437.

It follows, therefore, that Mrs. Truitt is entitled to such of the net income, since the death of testator, as will be in the proportion that her part of the property bears to all that was employed in its production. If the law left us in doubt as to her interest in the profits under the will, which it does not, the will, itself, would place the matter beyond all controversy. The will gives to her the land on which testator was living at his death, with negroes, stock, provisions and tools of every kind for farming purposes, indicating a plain intention of enjoyment, without change. Why all this preparation and provision for carrying on a farm, of articles, too, that can not well be held over without loss or destruction, if not for present use? And why should this bequest, in this form, be separated from the bulk of his estate for an independent farm and for his widow, if not for her immediate benefit, and that she should take its profits? It is argued that the testator could not have intended that she should take the profits of the first year, because the will otherwise made ample provisions for that year. The will certainly did set apart provisions for the first year for carrying on the farm, but if the testator did not intend that she should have the income or products of the farm for the first year, from what source is she to get a support for the second year? for there is no other provision than this made by the will. According to this argument the widow must be unprovided for, one year or the other. The testator did not intend this.

2. The main question is, that as to the residuary gift in favor of the daughter, Mrs. Willis, whether she is entitled to the profits or interests on the residuum from the death of the testator or after the expiration of a year? This question has been decided by the English Courts, both ways, under different circumstances; but it may be remarked, without going over all the cases in which these Courts have been in conflict, the residuary clauses of the different wills under construction contained directions to the executor to convert and invest the funds covered by such clauses, and in that, all the cases referred to, from the English Courts, differ from this. Nevertheless, *Rober on Legacies,* 2 *Vol.* 234, deduces

from a consideration of all these cases the following preamble, as the settled doctrine of these Courts now on this subject:

"When a residue of personal estate is given *generally* to one for life, with remainder over, and no mention is made by the testator respecting the interest, nor any intention to the contrary, to be collected from the will, the rule appears to be now settled by the recent cases, that the person taking for life is entitled to interest from the death of the testator, on such part of the residue bearing interest as is not necessary to be applied for the payment of debts. And it seems immaterial whether the residue is only given generally or directed to be laid out with all convenient speed in funds or securities, or to be laid out in lands; and so also *Fearns vs. Young.* 9 *Ves.* 549. *Augustein vs. Martin.* 1 *Turn. R.* 232. *Hewitt vs. Morris.* 1 *Turn. & Rep.* 241. 2 *Jar. on Wills,* 545, after reviewing those cases, and all others on that subject, and stating the different rules by which the Courts were governed in them, says: "It remains to be considered how far the preceding rules apply to cases in which the residuary clause contains no express trust for conversion, as when a testator too simply bequeaths all the residue of his personal estate in trust for A. for life, and after his decease, for B. absolutely. In such cases, of course, there can be no question that as to the property, which, at the testator's death, is invested upon permanent government, or even real securities, the legatee for life is entitled to the actual income, i. e. the dividends or interest from the period of the testator's death." *Also, Mills vs. Mills, 7 Sim.* 501. *Howe vs. Earl of Dartsmouth. 7 Ves.* 137.

The identical question involved in this consideration came up in *Williamson vs. Williamson. 6 Paige Ch. R.* 300, wherein Ch. Walworth, after a most careful investigation of the English cases, on this question, states the result to be: "That in a bequest of a life estate in a residuary fund, and when no time is prescribed in the will for the commencement of the interest or the enjoyment of the use or income of such residue, the legatee for life is entitled to *the interest or income of the clear residue, as afterwards ascertained, to be computed from the time of the death of the testator.*" In that case, as in this, the testator, after various legacies, gave the use of the residue of his personal estate to his wife for

life, and after her death to her three sons. The surrogate decided that the widow or life tenant was entitled to interest on the gross residue without making deduction for unpaid pecuniary legacies, from the death of testator. The chancellor says: "But although the surrogate's decision was correct, as to the widow's right to the interest or income of the residuary estate from the death of the testator, the principle upon which such interest is computed is altogether erroneous. It was not the intention of the testator to give his wife the interest or income of his whole personal estate, until the debts and legacies should be paid, or for the term of one year, and then the interest on the residuary estate after that time. But it was his intention to give her the use or income of the same residuary fund, the capital of which was to be distributed to his three sons upon her death or intermarriage. The case of *Covenhover vs. Shuler, 2 Paige* 132, and the authorities there referred to, settle the principle that when there is a general bequest of a residue of the testator's personal estate for life, with a remainder over after the death of the first taker, the whole residuary fund is to be invested for the benefit of the remaindermen, and the tenant for life is only entitled to the interest or income of that fund. And to ascertain the amount of such residuary fund so as to apportion the capital and income properly between the remaindermen and the tenant for life, the executor, upon settling the estate at the end of the year, must estimate the whole estate at what is then ascertained to have been its cash value, at the testator's death, after paying all debts, legacies and expenses of administration and other proper charges and commissions." Upon these authorities we hold that the life tenant, Mrs. Willis, is entitled to the income on the clear residuum, after deducting from the surplus of the estate a sufficiency for payment of debts and legacies, that is, that the debts and legacies be paid from the estate left by testator, and the income arising from the balance that shall be left, be paid to the life tenant from the death of testator; to illustrate: After taking out the widow's share of the negroes there will be left one hundred; from these take a sufficiency to pay the debts and legacies; what is left is the residuum, and the income produced by them since the death of testator belongs to the daughter. We mention these members and this class of property by way of exam-

ple only.   Of course, if there are more or less, or other prop-
erty, the rule is the same.

This strikes us as being a more sensible and reasonable rule
than any other that has been suggested.   Indeed, we have
not been able to see a case, directly in point, that is in
conflict with what we have prescribed.   In all those cases where
the Courts held that the income or interest was not. pay-
able to the life tenant until after the expiration of a year, and
which have been overruled by subsequent adjudications, were
cases where the executor was required by the will to con-
vert the funds into the securities from which the interest or
income was to be derived.   The year given in these cases was
supposed, by the Court, to be a reasonable time within which
the trustee could make the conversion.   Here, then, is no con-
version to be made—the property which the life tenant
is to have the use of for life are the same negroes, the same
lands, etc.; and at the death of the life tenant the same prop-
erty, specifically, is to be divided among the remaindermen.
Hence, the reason as well as the necessity of the rule
ceases.   Any other rule in this case would be unequal and
unjust.   It is said that Mrs. Willis, the daughter in this
case, is independent of the income arising from this property
for support, and, therefore, there is no necessity for the en-
forcement of the rule.   That may be true, and we suppose is,
but that is no reason why she should not have what the will
gives her.   We are laying down a rule that must prevail in
all other cases as well as this, and, therefore, must be
general.   A different ruling would exclude the daughter or
life tenant from all participation in the benefit of the estate
for the year, that, in some cases, might produce real want
and distress.   Here, the daughter who takes the life interest
is the only child of the testator, and this is all the present, and
possibly all future benefit she takes under her father's will,
out of his large estate; and the same rule and reasons
that would take the whole income for one year, to pay debts,
would take it for any year so long as the debts were unpaid,
and before they were paid the life tenant might die, and thus
the daughter would be actually deprived of all benefit under
the will, and the whole estate go to grandchildren, one degree
farther removed from testator.   Such could not be the
intention of the testator; and yet, so it might work out if a
different rule was prescribed to that we have laid down.

The intention of the testator was that the grandchildren should take that estate of which the mother should have the income and use, from his death, during her life; and that can only be ascertained by taking the debts and legacies out of what he left, not its profits.

Counsel for the interests in remainder have referred to our statutes, prescribing the duties of administrator in the administration of intestates' estates for payment of debts, etc., as furnishing a rule for the executors in this case in regard to the application of this income. There is no analogy between the cases, for in cases of intestacies the statute prescribes the rule of discounts, and the persons standing next to the deceased take the whole estate. These rules enable the heir to take the whole corpus, or as nearly so as circumstances will permit. But in this case, the will, instead of the law prescribes the rule of discounts. One person takes a life estate and others the remainder, and, of course, the rule that would operate wisely and beneficially for all the persons entitled to the estate in the one case, would be destructive to one class of beneficiary in the other, and beneficial only to the remaindermen. In the latter case, the rule of administration must be such an one as will operate upon all equally.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in directing the executor to appropriate the whole of the income of the first year to the payment of debts and pecuniary legacies.

The Court should have directed the payment of the debts and legacies from the corpus of the estate, and that the executor pay over to Mrs. Elizabeth Truitt, the widow of the testator, and to Milton H. Rachel and his wife, Elizabeth, the income, growing out of the use of the clear residuum, after payment of debts and legacies from the death of testator in the same proportion with their respective interests in such residuum according to will of testator.