John A. McIntosh, Administrator of WADE HAMBLETON, deceased, plaintiff in error, vs. DANIEL HAMBLETON, and others, defendants in error.

McIntosh vs. Hambleton.

[1.] Remaindermen under a will do not release their estate, or enlarge that of the tenant for life, by consenting, in writing, under seal, that the latter may receive the property without restrictions by the executor, and without giving bond to the remaindermen.

[2] Though an administrator is not liable for property lost or destroyed without fault on his part, he is bound to administer the estate according to law, by paying the debts before making distribution to legatees or heirs. This duty is enjoined upon him by law, by his oath of office, and by a sound public policy.

[3.] An administrator who, with notice of an outstanding debt, paid to the heir before the expiration of twelve months from the grant of administration, a portion of the estate, retaining, in slaves and other property, enough to meet said debt, is not protected against the creditor's claim, by the results of the late war in the way of the abolition of slavery and the serious depreciation of the other assets retained. The administrator, in such case, must make good the deficiency caused by his own illegal act.

In Equity. In Thomas Superior Court. Decree by Judge HANSELL. At Chambers. October, 1866.

This was a bill filed in 1859, by the defendants in error against the plaintiff in error. The parties, finally, in 1866, agreed upon the facts, and referred the cause, for a decree, to the Chancellor in vacation, with liberty to except to his decision.

John Hambleton, Senior, after making his will, (since admitted to probate) died in 1854, leaving nine children and his wife, Margaret, surviving him. Eight of the children, with the husbands of such as are femes covert, are the complainants in the present bill ; and the ninth, Wade Hambleton, now deceased, is the intestate of the defendant in the bill.

The testator bequeathed to his wife, Margaret, certain property for life, with remainder to his children. He also made his children the residuary legatees of his estate, and directed, both as to the remainder and the residuary interest, as follows: "That the male portion of my children who have not children themselves, shall own only a life estate, and if they die without, then, their share to go to the rest of my children."

The sons of the testator who had no children were two, to-wit: James, one of the complainants, and Wade, the intestate of the defendant. Two other sons of the testator,

to-wit: Daniel and John, also complainants in the bill, were his nominated executors, and qualified as such.

On the 7th of March, 1855, the following instrument, attested by two witnesses, was executed under seal. It was signed by Wade, for himself, and as guardian of one of the complainants, by the husbands of two of the complainants, (daughters of the testator,) and by four of the complainants, (sons of the testator,) to-wit: Daniel, John, James, and George.

"State of Georgia,      }
    County of Thomas.  }

Whereas, John Hambleton, late of said county, deceased, by his last will and testament, gave to his widow and relict, Margaret Hambleton, a large portion of his estate, real and personal, for life only, and another portion to Wade Hambleton for life only, and the absolute fee to pass upon the happening of a certain contingency, with another portion to James Hambleton in the way and manner as to Wade, and which will more fully appear by reference to said will, now of file and record in the Probate or Ordinary's office of said county. And, whereas, it is the will and desire of all the legatees under said will, that the said Margaret, Wade, and James, should receive the property, real and personal, without any restrictions from or by the executors, and without any bond to the remaindermen : Now, this writing witnesseth, that the undersigned legatees under said will, and remaindermen of the aforesaid property, do consent and agree, and fully authorize and empower, the executors of the last will and testament of John Hambleton, deceased—Daniel Hambleton and John Hambleton—to turn over to the said Margaret, Wade, and James Hambleton, all and every of the property, both real and personal, to each, every, and all of the aforesaid parties, to each the share given under the will—the consideration for the execution of this paper being the natural love and affection which the remaindermen have and bear towards the said Margaret, James and Wade Hambleton,

In witness whereof the said parties, remaindermen, have hereunto set their hands and affixed their seals, this the 7th day of March, A. D. 1855."

On the next day, an instrument somewhat similar to the above, was executed, by the two husbands who signed the foregoing; this second instrument being made and signed by them as trustees for their wives and for the children of their wives.

Under these instruments, the executors made divers payments to Wade Hambleton, taking his receipts therefor, until the aggregate sum in his hands, amounted to $4.218.06, a part of which was derived from the general estate of the testator, and a part from the remainder in the property bequeathed to the widow for life, she having, in the meantime, died.

About the 13th of August, 1858, Wade Hambleton, himself, died, childness, leaving a widow his sole heir at law.

McIntosh, the defendant in the bill, soon afterwards administered upon his estate. In a few days after twelve months had expired from the grant of administration (notice of the claim having been given to the administrator within the twelve months) this bill was filed, to compel the administrator to account for, and pay over to the complainants, as remaindermen, out of the estate of his intestate, the sums which his said intestate had received from the executors of John Hambleton, senior, deceased; the bill alleging that the said intestate took but the use thereof for his life, under the will of his father, and that the corpus, by the terms of the will, belongs, in remainder, to the other children of the testator, to wit, the complainants.

The administrator answered the bill, and also filed several pleas. He pleaded the instruments of the 7th and 8th of March, 1855, as a relinquishment by the complainants of all their rights in remainder. He added to this the pleas of *plene administravit* and *plene administravit praeter*.

From his returns to the Court of Ordinary and the facts as conceded, it appeared that he had in hand $3.100, in

money, which he paid to the widow as part of her distributive share in the estate, prior to the expiration of twelve months after the grant of administration ; that he retained in his hands two slaves, valued at $1.700, and some promissory notes, nearly sufficient in value for the payment of the complainants' claim; that there is a lot of land, unad·ministered, which would make up any deficiency likely at that time to occur ; that the slaves have been emancipated without fault on his part; and that some of the notes have become insolvent, and the land so much depreciated in value, that, if required now to meet this claim, he must do so from his individual means.

The Chancellor decreed in favor of the complainants for the whole amount, ($4.218.06, ) received by Wade Hambleton, the intestate, from the executors of his father, with interest thereon from the expiration of twelve months after the grant of administration ; and that the same, in the event of a deficiency of assets belonging to the intestate in the hands of the administrator, should, to the extent of $3.100, the amount distributed by the administrator to the widow, with interest thereon from the time of distribution, be collected out of the proper goods, etc., of the administrator himself.

Upon this decree error was assigned by the administrator ; and the points urged by his counsel, in the Supreme Court, were :

1st. That the effect of the instruments of the 7th and 8th of March, 1855, was to vest in his intestate an absolute estate, free from the claim of the remaindermen.

2d. That having retained property sufficient to pay off this claim, which was destroyed by the late war, he should not be required to bring back, or make good the amount distributed to the widow.

SEWARD & WRIGHT, for plaintiff in error

McINTYRE, for defendants.

HARRIS, J.

[1.] It has been earnestly argued that the agreement made by the remaindermen under the will of Hambleton, that the tenant for life might receive and use the property without any restrictions by the executor, and without giving bond for its forthcoming and delivery upon the termination of the life estate, was an assignment of title by remaindermen to such life tenant.

We do not so regard this covenant.

The tenant for life acquired by it no greater or other estate than that given by the will.

[2.] Whilst we recognize as sound law the principle, that an administrator is not liable to account for property of an estate lost or destroyed without any fault on his part, he must see to it that he administers the estate according to law, by paying, after the expenses of the administration, the debts due by the estate, before he turns over to the legatees, or heirs, their shares of property. Payment to heirs without having paid the debts, is illegal, contrary to the oath of office of administrator, and is very frequently the cause of trouble, expense and tedious litigation, all of which can easily be avoided by simply obeying the law.

[3.] The administrator with the will annexed,* it appears, within the twelve months after his qualification as administrator, paid to the sole heir at law a portion of the estate, retaining, as he supposed, in his possession sufficient negro and other property to pay the debt or claim in this case, of which he had due notice.

And now he seeks to escape liability to pay said claim, by a plea of *plene administravit*, wherein he alleges the negro property had become valueless by the result of the recent civil war.

His liability to pay out of his own estate is the penalty for not conforming to law. Had he paid the creditor of the estate, the loss by the valuelessness of negro property would

* The Reporter found in the record no mention of a will by Wade Hambleton.—REP.

have fallen on the heir.    Having paid the heir what she was
not entitled then to receive, the administrator's redress, if
he has any, must be by suit to compel her to refund.    If
compelled to refund the amount paid irregularly, in this
way only the administrator and his securities may be saved
harmless.

Let the judgment below be affirmed.