RUST, JOHNSTON & COMPANY, plaintiff in error, *vs.* REBECCA BILLINGSLEA *et al.*, defendants in error.

MILTON CREIGHTON, trustee, plaintiff in error, *vs.* JOHN R. JONES, administrator *et al.*, defendants in error.

This was a bill filed by the administrator of Billingslea, for direction as to the payment of the debts of his intestate, out of the assets in his hands, (the estate being insolvent,) including the widow's right to dower, homestead, etc:

*Held*, That the necessary expenses of the administration, including the provision allowed for the support of the family of the intestate, be paid out of the general funds of the estate:

*Held also*, That the decree of the Court below in favor of Milton Creighton, trustee, etc., be affirmed as to the amount thereof, and being a debt due by the intestate as *trustee*, is to be paid next after the expenses of administration and the year's support of the intestate's family. It appears from the record, that on the 11th of October, 1866, the intestate, Billingslea and Vason, jointly purchased from Jones, the Mott and Clayton plantations, gave their joint notes therefor, Jones making a deed to them jointly for the land, and they, at the same time, jointly executed a mortgage to Jones, on the land, to secure the payment of the notes given for the purchase-money thereof. The pur-

Rust, Johnston & Company *vs.* Billingslea *et al.*

chasers of the land occupied it jointly for one year, then Vason relin-. quished his interest in it to the intestate, who occupied and cultivated the same to the time of his death, on his own account. Jones was no party to the contract between Vason and Billingslea:

*Held,* That the *seisin* of the intestate of the land embraced in the Mott and Clayton plantations, was sufficient in law, under the provisions of the Revised Code of this State, to entitle his widow to dower therein; that a mortgage in this State is only a security for a debt, and passes *no title;* that the mortgage on the land was a *lien* created by the parties making it, which cannot defeat the widow's right to dower; that, inasmuch as the mortgage lien on the undivided half of the Mott and Clayton plantations was not created by the intestate as the *husband* of the widow, but by Vason, who subsequently conveyed the land to the intestate with the incumbrance of the mortgage thereon, the widow, before she can enjoy her dower in the undivided half of the land conveyed to her husband by Vason, with the incumbrance of Jones' mortgage, must first discharge that incumbrance created thereon by Vason to Jones, the same not being a lien created by *her husband,* but a lien which existed on the land at the time the husband acquired his title thereto from Vason. It is also disclosed by the record, that, on the 31st of January, 1868, Billingslea, the intestate, drew his draft in favor of Thomas Hill, for the sum of $4,322 39, payable 15th November next after date, upon Messrs. Rust, Johnson & Company, Albany, and to secure the payment of that draft, the intestate, on the same day, executed his mortgage deed to Hill for his undivided half interest in the tract of land, known as the Hill plantation, the sum specified in the draft being the amount due Hill by the intestate, for his share of the original purchase-money for the Hill plantation. This draft was accepted by Messrs. Rust, Johnson & Company for the accommodation of the drawer, and paid by them as such accommodation acceptors, they having no funds of the intestate drawer in their hands at the time of their acceptance of the draft. It also appears from the record, that Rust, Johnson & Company refused to accept the draft of the intestate, unless the mortgage was made, and that it was agreed that the mortgage should be transferred to them on payment of the draft by them. The draft was paid at maturity, and the mortgage was transferred to them on the 25th of November, 1868:

*Held,* That, under the general rule applicable to the payment of the debt by accommodation acceptors, or securities, they would have been entitled to the transfer of the mortgage; most certainly, they were entitled to such transfer, under the *special agreement* of the parties, as shown by the record, and were entitled to the same specific lien on the Hill plantation, or the proceeds of the sale thereof, as the original mortgagee, and to have the same paid according to the priority of its lien upon that specific property included in the mortgage.

*Held also*, That the widow of the intestate was not entitled to a home-
  stead and personal exemption out of his property, in addition to her
  dower and provision for her year's support.

*Held further*, That the factor's lien of Rust, Johnson & Company, was
  not entitled to priority of payment out of the proceeds of the crops
  made on the Mott and Clayton plantations, in the years 1868 and 1869,
  on the statement of facts disclosed in the record.

*Held also*, That overseers, unless they are employed as common day
  laborers, and work as such on the plantation, are not entitled to pri-
  ority of lien for the payment of their wages, under the Act of 1869.

Distribution of Estates.  Liens.  Practice Supreme Court.
Before Judge CLARK.  Dougherty Superior Court.  Feb-
ruary Term, 1871.

In September, 1868, Francis A. Billingslea died intestate,
leaving large personal and real property to be divided be-
tween his wife and five minor children, and his creditors, ac-
cording to law.  Jones, as his administrator, took charge of
all his property, and under an order of Court, for that pur-
pose, worked his plantations for the year 1869.  Subse-
quently, he filed a bill asking the direction of the Court as
to the conflicting claims of the widow and creditors.  They,
severally, answered, setting up their respective claims, and
by consent, the parties agreed that the Chancellor should
decide the questions of law and facts, subject to review by
the Supreme Court.  Judge Strozier being interested, Judge
Clark presided by consent.  It appeared that intestate died
possessed of two plantations in Dougherty county, well stock-
ed with provisions, mules, etc., and a joint interest, with one
Davis, in another stocked plantation in said county, with
the cotton crop raised thereon in 1868.  This last plantation
was known as the Hill place, the others as the Mott and
Clayton places, respectively.  The administrator had sold all
the personalty and all the realty, except the Mott and Clay-
ton places, under consent that the liens should follow the
proceeds, and held the proceeds and said places, subject to
the order of the Court.  The bill showed that the assets were

not sufficient to pay all the debts, and the question to be settled was, which creditors had priority of lien, etc. These claims, with the special facts touching each, were as follows:

Jones, the administrator, claimed for himself, individually, payment of a note made by intestate and one Vason, jointly, on the 11th of October, 1866, due the 1st of January, 1868, and payable to Jones or bearer. This note was for part of the purchase-price of the Mott and Clayton places and the stock thereon, which Jones had that day sold to intestate and Vason, and they had given Jones this and a mortgage on said Mott and Clayton places, and the stock thereon and the crops to be raised thereon in 1867, to secure this balance of purchase-money. The delivery of Jones' deed to intestate and Vason and their said note and mortgage to him were simultaneous, and done at the time of the purchase.

Intestate paid his half of the purchase-money to Jones, he and Vason bought jointly and gave this note and mortgage for the balance; they farmed together in 1867 on said places, then dissolved the partnership, and left intestate in possession of the places, and agreed with Vason to pay said note and let him out of the firm; and thenceforward intestate farmed said places on his own account exclusively. Jones was not a party to the agreement as to intestate's paying this note. Jones denied that the widow was dowable out of this land until this mortgage debt was paid, and claimed that his lien on these lands, stock and crop of 1867, took priority of all other liens.

Cyrus A. Billingslea, and Milton Creighton as trustee of James Billingslea, claimed that Francis A. Billingslea, while in life, was the executor of the last will and testament of his father, Francis Billingslea, late of Taliaferro county, deceased, and under that will received into his hands as trustee of an idiot brother, John, a large amount of money, personal property and negroes, all of which he held in his hands as such trustee, and managed from its receipt by him to his death, except the negroes, which he held to their emancipation, and that intestate died with this trust fund in his hands

unaccounted for, which, it was claimed, amounted to a very large sum, and which Cyrus A. Billingslea and Creighton as trustee, claimed to be superior in dignity, and prior to all other liens and should be paid by the administrator out of the assets of the estate in his hands prior to all other demands against the estate. Pending the hearing, it was discovered that the accounts of this claim were too extended and complicated to be ascertained in this hearing, and by general consent it was referred to a Master in Chancery to investigate said claim and the account respecting it, and to make his report at a subsequent term, which was done, and that the hearing of these causes be suspended until that report should come in. Subsequently, said Master reported in favor of said claim, and stated the amount due to these claimants, which report was made the judgment of the Court, and the hearing of this cause was resumed.

After the death of Francis A. Billingslea, his widow applied to the Court of Ordinary of Dougherty for twelve months' support under the statute, and the sum of $5,188 53 had been set apart and allowed. This sum had been paid to her by the administrator, and it was claimed that this payment had precedence over all other claims.

Rust, Johnston & Company claimed that the estate of Billingslea was indebted to them on their acceptance of his draft, drawn in his lifetime, in favor of Thomas Hill, dated 31st January, 1868, accepted by them, the payment of which draft was secured by a mortgage to said Thomas Hill, on his (Billingslea's) interest in the Hill place.

This draft was to fall due in November, 1868. Rust, Johnston & Company had no assets of intestate, but accepted solely for his accommodation, with the understanding that if they paid the draft this mortgage should be transferred to them.

This acceptance had been paid off by Rust, Johnston & Company at its maturity, and after the death of the payee and mortgagee, and the mortgage subsequently assigned by

the representatives of said Thomas Hill to Rust, Johnston & Company.

When the land covered by this mortgage deed was offered for sale by the administrator, Jones, the administrator and Mrs. Billingslea had entered into a written agreement in respect thereto, of which the following is a copy, which was read and put in evidence in this connection, and in respect to the widow's claim of dower:

"John R. Jones, administrator, *vs.* Samuel Mayer, agent R. A. Billingslea, J. A. Davis and others. Bill of injunction, etc. Answer and cross-bill.

" It is agreed between the parties in the above case that the whole of the property, except the 'Mott plantation' of said estate, be sold as advertised, on the first Tuesday in December, 1869, it being understood that Mrs. Billingslea consents to the same, and waives all claim of dower upon the other lands, but claims dower in the whole lands, and homestead to be located on said plantation (the Mott place) in the Second District of said county, consisting of lots Nos. 255, 254, 265, 266, 267, and also claims personalty exemption in the Hill place, but consents to the sale of the property, and will claim the money arising from the sale.    Signed,
          " R. A. BILLINGSLEA.
          " JOHN R. JONES, *Administrator.*"

Rust, Johnston & Company had thereupon consented in parol to let the administrator sell the whole title to said lands, (the decedent's undivided half of said Hill place,) that the purchaser might take the title freed from the mortgage, and on the agreement of Jones, the administrator, the lien was to attach to the proceeds of the sale in his hands, in the same manner and to the same extent as it did to the land itself. On this understanding the land was sold. Jones, as the administrator, also realized from the sale of the cotton

crop of 1868, and from the sale of the personal property on the Hill place, and of cotton made on the Hill place by John A. Davis, $1,460 00 ; and from the sale of personal property on the Mott and Clayton places, including the crops made on those places in the year 1869, (of which the sum of $1,394 90 was raised from the sale of subsequently purchased property on these places not subject to said mortgage, in favor of Jones,) and from the sale of other personal property and other sources. He also received the rent of the Mott and Clayton places for the year 1870. He had paid out the sum of $17,553 26, including a part of his commissions on these amounts, and including also the sum allowed to the widow for her twelve months' support.

Rust, Johnston & Company claimed that the said estate was indebted to them as factors, in a further sum, for advances made to the said Francis A. Billingslea during the year 1868, and while he was in life, by their acceptances of his drafts on them, and which they afterwards paid to enable him by their negotiation to purchase provisions, supplies and materials to make the crop of that year, and on the express agreement that these acceptances should constitute and be a factor's lien on the crops of said Billingslea made by him in the year 1868, and that by the aid they extended on this agreement the said Billingslea was enabled to make his crop that year.

As to this last claim, it was shown that the drafts were for money to get general supplies for the plantation, coffee, sugar, bacon, etc., but none for commercial manures. While it seems to have been understood that Rust, Johnston & Company had a lien on intestate's crops of 1868 for said advances by accepting his drafts, there was no writing to that effect. Scheffer & Nephews had made an advance to intestate in June, 1868, for which he had given them his note and a bill of sale of one hundred bales of cotton of the then growing crop to be delivered to them and sold to pay said advance. This paper had never been recorded, but Scheffer

& Nephews claimed that they made the advance as factors to help him raise said crop, and that they had priority of lien on the proceeds of that crop in the administrator's hands. Samuel Mayer claimed a lien on the proceeds of the crop of 1868 for certain supplies sold to the laborers who raised it and to intestate. He showed no agreement for a lien.

Four persons who had overseed for intestate on said plantations, and were not paid, claimed a general lien on his estate as laborers.

One Buttrell and William Billingslea, each, held mortgages in their respective favors, on the Mott and Clayton places, but both were younger than Jones' mortgage. The widow claimed dower in the Mott and Hill places, and one-third of the proceeds of the Hill place, or the money value of such dower in lieu thereof. And she also insisted that a homestead should be set apart for her from the Mott and Clayton places, and an exemption of $1,000 00 in gold, from the personal property of the Hill place, sold under said consent. All the proper papers in proper shape, and all the attending facts were shown to the Court. Other debts were proved, but are no way important here. The Chancellor decreed that Jones, as administrator, should distribute as follows :

1st. Expenses of administration, including costs, commissions, personal expenses and counsel fees, (to which each party taking under this decree should contribute *pro rata*,) and expenses of last illness.

2d. That Jones should retain the balance of the purchase-money due for the Mott and Clayton places, out of any funds in hand, in order to make way for the dower on said places, unless the creditors would consent to pay the widow $3,500 00, in full of her claim of homestead and dower. If this was done, then this note was to be paid out of the proceeds of the Mott and Clayton places and the stock and crop thereon mortgaged.

3d. The widow was to have dower in the proceeds of the

half of the Hill place and in the Mott and Clayton places, after the purchase-money should be paid to Jones, and she and her children were to have a homestead in the Mott and Clayton places, "subject to the dower after the purchase-money is paid." If she and the creditors consented, $3,500 00 was to be paid to her in full of both claims. If not, commissioners appointed by him, were to assign dower and homestead, subject to dower in the proceeds of the half of the Hill place and of the proceeds of the Mott and Hill places, after their sale and after paying out of it Jones' mortgage.

4th. Davis, as surviving partner, was to have the amount due him out of the proceeds of the half of the Hill place and the property thereon.

5th. The amount due Creighton, as trustee, was to be paid.

6th. Rust, Johnston & Company, as acceptors, holding the transferred mortgage of Hill, were to take the proceeds of the Hill place, of the crops of the Mott and Clayton places, after paying purchase-money, dower, homestead and expenses of administration, trust funds, etc., aforesaid.

7th. He held the liens of the overseers to be good as laborer's liens, but only as against the crops raised after they began overseeing for intestate. But he ordered Rust, Johnston & Company's factor's lien paid before them, because older. And he allowed Scheffer & Nephews a factor's lien, to take effect according to its date.

8th. Next the Buttrell and Billingslea's mortgages were to be paid according to dates. And if anything remained, it was to be paid *pro rata* to the general creditors.

Rust, Johnston & Company assign as erroneous—

1. So much of said decree as requires each party receiving money under it to contribute, *pro rata*, to the payment of counsel fees, or other expenses paid out by the administrator.

2. That part of said decree which directs the mortgage debt of Jones against William J. Vason and the intestate, to be paid out of any money in the hands of the administrator, to make way for dower for the widow on the Mott and Clayton places.

3. That part of said decree which appropriates the proceeds of the sales of the Hill place, covered by this mortgage debt, to the payment of Jones' mortgage debt on the Mott and Clayton places, against William J. Vason and the intestate, to the exclusion of this debt, its payment, and in displacement of their mortgage lien on said fund.

4. That part of said decree allowing dower and homestead to the widow, in the Mott and Clayton places.

5. That part allowing the widow's claim for dower or money in lieu thereof, in the money arising from the sale of the "Hill place," after her waiver of that claim and the sale of the land under that agreement.

6. That part appropriating the proceeds of the sales of the personal property on the Mott and Clayton places, or any part thereof, to the payment of the mortgage debt of Jones against William J. Vason and the intestate, in preference to the payment of their individual debt and liens, and of the other creditors against the intestate, out of the proceeds of the sale of the same.

7. That part of said decree appropriating the proceeds of crops of corn and cotton, made on the Mott and Clayton places in the years 1868 and 1869, and especially of the cotton received and sold by Jones, made on these places in 1868, in preference to their factor's liens on said crops, and particularly said cotton, or the proceeds of the sale of said cotton, and in preference to the claims, debts and liens of all other creditors.

8. That part which appropriates the proceeds of the sales of the Hill place covered by their mortgage, and to that extent to the payment of the debt in favor of Milton Creighton, trustee of the children of James Billingslea and Cyrus A. Billingslea, in preference to the mortgage debt and lien of Rust, Johnston & Company, and its displacement or postponement for that purpose, their said mortgage debt and lien being for the purchase-money due on said land.

9. That part which gives overseers the character of laborers and directs them to be paid accordingly.

Creighton, as trustee, with other things not insisted on here, says the Court erred in charging him with his *pro rata* of counsel fees and expenses of administration; in allowing Jones to retain his balance of purchase-money out of any money in his hands, to make way for dower, etc., because, while he has a lien on the mortgaged property more dignified than dower, the Chancellor ought not to give him a lien on the general estate in lieu thereof, and because the Mott and Clayton places were subject to the firm debt of Vason & Billingslea, and firm debts should be confined to it; in allowing the widow's homestead as against said Jones' vendor's lien, and over Creighton's trustee's lien; in allowing dower in the proceeds of the half of the Hill lot, in the face of her said agreement in postponing this trust claim till dower, etc., was provided for, and lastly, in giving Rust, Johnston & Company's mortgage effect against the proceeds of the half of the Hill place, sold as aforesaid.

NOTE.—When the cause was called here for argument a motion was made to dismiss the bill of exceptions of Rust, Johnston & Company because some of the notes used in evidence below were not copied in the bill of exceptions. It was replied, that they were copied in the answers. While looking to see if this were so some of the answers were found to be missing. Thereupon counsel for Rust, Johnston & Company moved to suggest a diminution of the record to get said answers. It was objected that he was too late. But the Court said the suggestion of diminution might then be made, under the circumstances. Finding that this would work a postponement of the cause till the next term, the motion to dismiss was withdrawn, it was conceded that these missing answers were not material to an understanding of the cause, and argument proceeded. By consent, Creighton's case was argued with this.

LYON, DEGRAFFENREID & IRVIN; VASON & DAVIS, for Rust, Johnston & Company.

Rust, Johnston & Company *vs.* Billingslea.

WILLIAM E. SMITH, for Creighton, trustee.

HINES & HOBBS; D. H. POPE; WRIGHT & WARREN; C. B. WOOTTEN, for the widow and other creditors.

WARNER, Judge.

1. It is considered, ordered and adjudged that the judgment and decree of the Court below be reversed, it being the opinion of this Court that the necessary expenses of the administration, including the provision allowed for the support of the family of the intestate, should be paid out of the general funds of the estate.

2. That the decree in favor of Milton Creighton, trustee, etc., should be affirmed as to the amount thereof, and be paid next after the expenses of administration and the year's support of the intestate's family.

3. That the widow of the intestate is entitled to dower in the undivided half of the Hill plantation, and in the Mott and Clayton plantations, but she is bound to discharge the incumbrance of Vason's mortgage to Jones on the one undivided half thereof, which existed prior to the *seizin* of her husband of that undivided half of said last named plantations.

4. That Rust, Johnston & Company, assignees of the mortgage made by the intestate to Hill, have a specific lien on the property covered by the mortgage, and are entitled to have their mortgage debt paid out of that property according to the priority of its lien on that specific property after the widow's dower shall have been allowed.

5. That the widow of the intestate is not entitled to a homestead and personal exemption out of his property, in addition to her dower, and provision for her year's support.

6. That the factor's lien of Rust, Johnston & Company is not entitled to priority of payment out of the proceeds of the crops made on the Mott and Clayton plantations, in the years 1868 and 1869.

7. That the overseers, unless they worked as common day laborers on the plantations, are not entitled to priority of lien for the payment of their wages.

It is further ordered and adjudged, that the Court below proceed to hear the case, and to order a distribution of the assets of the intestate estate in conformity to the judgment of this Court on the questions decided by it on the exceptions taken to the decree, and that so much of the decree of the Court below as was not excepted to stand affirmed, and that the Court decree a sale of the Mott and Clayton plantations so as to enable the widow to have her dower out of the proceeds thereof, as she has made her election to do so, and to apportion the proceeds of the sale of the Mott and Clayton plantations and the proceeds of the sale of the Hill plantation (which has already been sold) to the payment of the widow's dower, she being entitled to her dower in the one undivided half of the Hill plantation, and to her dower in the proceeds of the sale of the Mott and Clayton plantations, on discharging the incumbrance created by Vason's mortgage on the undivided half of the land to Jones; and after the widow's claim of dower is paid the balance of the proceeds of the sale of the specific lands covered by the respective mortgages, to be applied to the payment of the respective mortgage liens on the specific property mentioned therein. And if, in the payment of the assets as hereinbefore directed, there should not be sufficient assets of the intestate's estate in the hands of the administrator without intrenching upon the specific mortgage liens, then the respective mortgage liens on the specific property to abate in proportion to the respective amounts thereof.

Judgment reversed.

McCay, Judge, concurred, but furnished no opinion.

Lochrane, Chief Justice, dissented, but gave his reasons therefor in Slaughter *vs.* Culpepper, *post*, next case.