Philip H. ALSTON, Jr., and the Citizens and Southern National Bank, Executors of the Estate of Charles Loridans, Appellants,

v.

UNITED STATES of America, Appellee.

No. 21402.

United States Court of Appeals Fifth Circuit.

July 23, 1965.

Francis Shackelford, James E. Thomas, Arnold C. Moore, Alston, Miller & Gaines, Atlanta, Ga., for appellants.

Benjamin M. Parker, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and MOORE* and BELL, Circuit Judges.

MOORE, Circuit Judge.

This suit was brought by the executors of the Estate of Charles Loridans (the executors) to obtain a refund of $49,071.-14 paid to the United States of America (the Government) because of an asserted estate tax deficiency. Upon motion by the executors and cross-motion by the Government for summary judgment, the trial court found in favor of the Government. 228 F.Supp. 216 (N.D.Ga.,

* Of the Second Circuit, sitting by designation.

1964). The executors appeal. The facts are not in dispute.

On June 9, 1956, Charles Loridans died, a resident of Atlanta, Georgia. By will, after certain specific bequests to nieces and nephews, the residue of the estate was left to the Charles Loridans Foundation, Inc., a duly qualified charitable foundation. In the estate tax return filed by the executors on September 6, 1957, a gross estate of $5,923,446.89 was reported from which were deducted funeral and administration ($1,042.41) expenses, debts, specific bequests, charitable and non-charitable, and estate and death taxes, leaving an amount, entitled "Residue Claimed for Charitable Deduction", of $4,402,964.04.

On September 9, 1957, the executors filed the estate's income tax return wherein they deducted as "administration expenses" items totalling $66,827.33. The Citizens and Southern National Bank (the Bank), a co-executor which maintained the estate's books, charged this amount to the estate's principal account. However, after the Commissioner had asserted on January 26, 1960, an estate tax deficiency beacuse of the failure to deduct these administration expenses from the gross estate in computing the residue, the Bank on February 26, 1960, made a reversing entry on its books to show a charge to estate income instead of principal. Thereafter, the executors paid the asserted deficiency and instituted this suit to recover the payment.

The pertinent statutes and applicable decisions clearly indicate affirmance of the judgment in favor of the Government. Section 2051 of the Code [1] defines the value of the "taxable estate" as "determined by deducting from the value of the gross estate the exemption and deductions provided for in this part." Amongst these deductions listed in order (Sec. 2053) are "amounts (1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate, and—." From the gross estate also are to be deducted bequests to charitable corporations.

Although there is no specific reference in the Georgia statutes to administration expenses as such, there are provisions that, unless otherwise directed, debts should be paid out of the residuum (Georgia Code Annotated, Sec. 113–821) and that "commissions are part of the expense of administration, and shall be paid from the general estate, if any." (Sec. 113–2001).

The Code defines the value of the gross estate as "the value at the time of [his] death—" (Sec. 2031). This court has held that "the date of the decedent's death is the time as of which the situation must be viewed. [citing cases]" and that "at the decedent's death his estate had the obligation of paying estate taxes, debts, charges and expenses of administration." Ballantine v. Tomlinson, 293 F.2d 311, at 312 (5 Cir., 1961). Although the amount of the marital deduction was the specific problem at issue in Ballantine, the estate tax had to be resolved in relation to the adjusted gross estate which the court declared "must be reduced by the amount of the charges against it even though those charges be met from another source." Id. at 313. Applying this principle here, administration expenses must be deducted from the gross estate even though paid out of post-mortem income.

Conversely, "income earned during administration is not a part of the gross estate for estate tax purposes, and is not taxable as such. Instead, it is taxable to the estate as income, * *." Waldrop v. United States, 137 F.Supp. 753, 756, 133 Ct.Cl. 902 (1956). That the Foundation would be the recipient of the income is immaterial to the computation of the gross estate because "the statutory scheme seems to contemplate separate treatment of this asset [income], though it will ultimately go to the same persons who, by the will or the law of descent, get the statutory 'gross

1. All references to "the Code" are to the Internal Revenue Code of 1954.

estate'." Waldrop, supra, at 756. The effect of yielding to the executors' argument here would be to increase the amount of the gross estate by the amount of post-mortem income—a result directly contrary to the statutory definition of gross estate. Nor should the circumstance that the Foundation would receive the income alter the applicable legal principles. Were there an intervening life interest, the income of such a beneficiary could not be used to pay administration expenses and thus enlarge the residue destined for another.

The Loridans will does not specify the source from which pre-residue items must be met, but both Georgia statute and Georgia decisions leave no doubt as to the correct answer. The statute (Sec. 113–821) provides that "Unless otherwise directed, the debts of the testator should be paid out of the residuum." "Priority of debts" is clearly stated (Sec. 113–1508). "Claims against the estate of a decedent shall rank in the following order: 1. Year's support for the family. 2. Funeral expenses, * * *. 3. The necessary expenses of administration. * * * [various debts and obligations.]"

■ The Foundation is entitled to receive the residue but "a residuary legacy is 'a general legacy into which fall all the assets of the estate after the satisfaction of all other legacies and the payment of all debts of the estate and all costs of administration.' Redfearn on Wills and Administration (Rev.Ed.), 234 § 144; Henderson v. First National Bank of Rome, 189 Ga. 175, 178, 5 S.E.2d 636, 128 A.L.R. 816." Young v. Young, 202 Ga. 694, 701, 44 S.E.2d 659, 664 (1947). To the same effect are Dixon v. Richardson, 194 Ga. 443, 21 S.E.2d 854 (1942); Colyer v. Huntley, 179 Ga. 332, 175 S.E. 901, 95 A.L.R. 1140 (1934); Clarkson v. Clarkson, 64 Ga.App. 1, 12 S.E.2d 468 (1940); Lester v. Toole, 20 Ga.App. 381, 93 S.E. 55 (1917); McIntosh v. Hamble-

ton, 35 Ga. 94, 95 (1866). The testator himself recognized these elementary principles because the residue was to come into being only "after the satisfaction of the foregoing items of this Will, * * *," namely, burial and cemetery upkeep, payment of debts, various legacies and taxes." (Will, Fourteenth, Sixteenth). Since administration expenses by law have priority over debts and legacies, a fortiori, are they pre-residue deductions.

■ The executors rely on the fact that administration expenses were actually charged to post-mortem income. Were it necessary to look for construction in the acts of the executors, their treatment of administration expenses as a charge against corpus with a reversing entry made years later and only after the Commissioner upon audit had reduced the residuum by the amount of the additional administration expenses, some significance might well be attributed to these acts—but it is not.

The two cases, Luehrmann's Estate v. Commissioner of Internal Revenue, 287 F.2d 10 (8 Cir., 1961) and Republic National Bank of Dallas v. Commissioner of Internal Revenue, 334 F.2d 348 (5 Cir., 1964) do not support the legal proposition urged by the executors, namely, that administration expenses, if paid out of post-mortem income, are not chargeable against corpus, thereby increasing the residue. In neither case did the court have to cope with this question because in each case the court found no proof of payment out of income. No amount of legalistic legerdemain can produce from these cases "the principle that where expenses of administration are paid out of post-mortem income, the amount of corpus available for charity is not diminished by such payments * * *" as argued by the executors. Nor do the several Georgia decisions [2] aid the executor's contention. The fact situations therein were radically different and, hence, the

2. Rust, Johnston & Co. v. Billingslea, 44 Ga. 306 (1871); Rachels v. Wimbish, 31 Ga. 214 (1860); Burney v. Spear, 17 Ga. 223 (1855); and Tinsley v. Maddox, 176 Ga. 471, 168 S.E. 297 (1933).

decisions not relevant here. As desirable as it may be to encourage charitable contributions, in the absence of specific direction in the will, this purpose, no matter how praiseworthy, does not permit the Commissioner or the courts to ignore the clear language of the statutes and the applicable decisions.

Judgment affirmed.