DUBINA, Circuit Judge,
dissenting:
I.
Because I am convinced that the majority has erred in adopting the Tax Court’s analysis in this case, I respectfully dissent. I disagree with the majority’s holding for two reasons: First, the holding disregards fundamental federal estate taxation principles in light of state law, which allows administration expenses to be paid out of post-mortem income, and second, it contravenes binding circuit precedent.
II.
In this case, both the decedent’s will and relevant state law allowed administrative expenses to be paid out of post-mortem income; however, “the allowable sources of 'payment for administration expenses under state law does not necessarily affect the source from which the deduction for administrative expenses must be made under federal law.” Burke v. U.S., 994 F.2d 1576, 1580 (Fed.Cir.) (emphasis in original), cert. denied, — U.S. —, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993) (citing Lyeth v. Hoey, Collector of the Internal Revenue, 305 U.S. 188, 193-94, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938)).
Section 2031 of the Internal Revenue Code (“I.R.C.”) defines the value of the gross estate as “the value at the time of [the decedent’s] death.”[1] At the decedent’s death, the estate has the obligation to pay administration expenses. I.R.C. § 2053; Ballantine v. Tomlinson, 293 F.2d 311, 312 (5th Cir.1961).[2] Also, contrary to the Tax Court’s assertion, administration expenses, although unascertained on the date of death, are deemed to accrue at the decedent’s death. Alston v. United States, 349 F.2d 87, 88 (5th Cir.1965) (“at the decedent’s death his estate had the obligation of paying estate taxes, debts, charges and expenses of administration”) (citation omitted); see also Estate of Street v. Commissioner, 974 F.2d 723, 727 (6th Cir.1992). “[R]egardless of the source of payments for administration expenses, such payments are charges against the gross estate and must be accounted for accordingly.” Burke, 994 F.2d at 1581 (citing Estate of Street, 974 F.2d at 728-29; Alston, 349 F.2d at 88; Rifkind v. United States, 5 Cl.Ct. 362, 374 (1984)).
Using income to pay administration expenses can be of great benefit to an estate, especially where no other liquid assets are available to pay the expenses; yet, income earned by an estate during administration is not part of the gross estate. See Alston, 349 F.2d at 88; Fisher v. United States, 28 Fed.Cl. 88 (Fed.Cl.1993). Allowing administration expenses to be paid out of income earned during the administration of the estate, without reducing the gross estate by the amount of the charges against it, has the effect of increasing the gross estate by the amount of post-mortem income. See Alston, 349 F.2d at 89.
*1091 III.
The Alston ease is binding precedent. At the time Alston was decided, state law required administration expenses to be paid out of the residuum of the estate.[3] The holding of Alston, however, was based upon an interpretation of the statutory definition of the gross estate, which is a matter of federal law. See id.
In Alston, the residue of the decedent’s estate was left to a qualified charity. The executors of the estate filed an estate tax return with a gross estate of approximately $5.9 million. One thousand forty-two dollars and forty-one cents ($1,042.41) in funeral and administration expenses were deducted along with other deductions, leaving an amount of approximately $4.4 million in residue for the charitable deduction. Id. at 88. The next year, the executors filed the estate’s income tax return, claiming administration expenses totalling $66,827.33 as deductions. The executors had charged this amount against the estate’s principal account. Because the executors had failed to deduct these administration expenses from the gross estate in computing the residue for the charitable deduction, the Commissioner asserted an estate tax deficiency. Thereafter, the executors changed their book entries to charge the-expenses to the estate’s income, rather than the principal, paid the deficiency, and instituted a suit to recover the amount of the deficiency. Id.
The executors argued that “where expenses of administration are paid out of postmortem income, the amount of corpus available for charity is not diminished by such payments.” Alston, 349 F.2d at 89. The court rejected the executors’ argument and held that the source of the deduction was the gross estate and that “administration expenses must be deducted from the gross estate even though paid out of post-mortem income.” Id; see also Ballantine, 293 F.2d at 313 (the gross estate must be reduced by the amount of the administration expenses even though those expenses are met from another source). The court reasoned that the “effect of yielding to the executors’ argument here would be to increase the amount of the gross estate by the amount of postmortem income — a result directly contrary to the statutory definition of gross estate.” Alston, 349 F.2d at 89 (emphasis added).
We are bound by the Alston court’s interpretation of federal law. Moreover, we are bound by precedent which specifically rejects the Tax Court’s interpretation of the relevant legislative history of the marital deduction. See Ballantine, 293 F.2d at 313. The legislative history provides:
The interest passing to the surviving spouse from the decedent is only such interest as the decedent can give. If the decedent by his will leaves the residue of his estate to the surviving spouse and she pays, or if the estate income is used to pay, claims against the estate so as to increase the residue, such increase in the residue is acquired by purchase and not by bequest.
S.Rep. No. 1013 (Part II), 80th Cong., 2d Sess. (1948), reprinted in 1948 U.S.C.C.A.N. 1163,1228 (emphasis added). In the present case, the Tax Court erroneously held that administration expenses are not “claims” because they come into existence only after the death of the decedent. Going further, the court distinguished administration expenses from claims against the estate reasoning that administration expenses relate to both the corpus and the income of the estate. Therefore, the court held that the legislative history cited above does not control the treatment of administration expenses.
In Ballantine, a decision that is binding on this court, the court rejected the executors’ argument that the term “claims” as used in the legislative history referred to debts and excluded administration expenses. Specifically, the court held that there was no “logical basis for such a narrow construction” and that “[t]he reason for including the one applies to the other.” Ballantine, 293 F.2d at 313 (citation omitted). Thus, the majority’s adoption of the Tax Court’s interpretation of the legislative history contravenes binding circuit precedent setting forth what I believe is the more logical interpretation.
*1092 IV.
In sum, the precedent set forth in Alston and Ballantine should be followed in this ease. As a consequence, the Tax Court’s judgment in favor of the estate should be reversed.
Although state law in this case allows administration expenses to be paid out of income earned by the estate during administration, federal law requires the gross estate to be reduced by the amount of the administration expenses, irrespective of the source of the payment. Accordingly, the marital and charitable deductions should be reduced by the amount of administration expenses that were paid out of income earned by the estate during administration.

. I.R.C. § 2032 provides an alternative valuation scheme which is not relevant to this case.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. There was no specific state statute regarding administration expenses, but the court determined that the source of payment of the expenses was the residuum of the estate.