James W. BURKE, as Personal Representative of the Estate of Edna Sproull Williams, Deceased, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 92–5062.

United States Court of Appeals, Federal Circuit.

June 2, 1993.

William R. Frazier, Frazier & Frazier, P.A., Jacksonville, FL, argued for plaintiff-appellant.

Joan I. Oppenheimer, Atty., Dept. of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen and Gilbert S. Rothenberg, Attys.

Before NIES, Chief Judge, PLAGER and RADER, Circuit Judges.

NIES, Chief Judge.

James W. Burke, as personal representative of the estate of Edna Sproull Williams, appeals from the summary judgment entered by the United States Court of Federal Claims[1] in *Burke v. United States*, No. 540–89T (Cl.Ct. Nov. 27, 1991), that Williams' estate is not entitled to a refund for taxes paid based on the federal estate tax return filed November 24, 1982.

1. Congress changed the name of the United States Claims Court to the United States Court of Federal Claims, effective October 29, 1992. Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992).

2. Florida statute states:

## I.

Edna Sproull Williams died testate on February 28, 1982, while a resident of Jacksonville, Duval County, Florida. James W. Burke is the presently acting personal representative of the Williams estate. Williams' will was filed for probate in the Circuit Court for Duval County, Florida (the probate court) on March 2, 1982.

On November 11, 1982, Burke petitioned the Florida probate court to construe Articles I and XIII of Williams's will under Florida law[2] as authorizing payment of administrative expenses out of the income earned by the estate over the probate period (post-mortem income), rather than requiring payment out of the principal of the estate. Articles I and XIII of Williams' will provide:

*Article I*

I direct that all my just debts, including expenses of my last illness and funeral expenses be paid by my Personal Representatives as soon as reasonably convenient after my death. I direct that all estate, inheritance and succession taxes that may be levied against my estate, including such taxes levied against property constituting any part of my estate for federal estate tax purposes, whether passing under this Will or otherwise, shall be paid by my Personal Representatives solely out of the residuary estate being bequeathed hereunder, it being my intention that the portion of my estate devised and bequeathed to or for the benefit of all legatees hereunder, except the residuary legatee, shall be enjoyed by them free from any burden for such estate, inheritance or succession taxes....

*Article XIII*

I give, devise and bequeath all of the rest, residue and remainder of my estate, including all lapsed legacies or devises, after

Unless the will otherwise provides ... all expenses incurred in connection with the settlement of a decedent's estate, including debts, funeral expenses, estate and other death taxes, family allowances, fees of attorneys and personal representatives, and court costs shall be charged against the principal of the estate. Fla.Stat.Ann. § 738.05(1) (West Supp.1992).

paying therefrom any debts and taxes, including estate, inheritance, or succession taxes and other obligations of my estate, including all administration expenses, to the Trustees of the Edna Sproull Williams Foundation.... [3]

On November 12, 1982, only one day after the unopposed petition for construction was filed, the Florida probate court entered an Order construing the will as follows:

Articles I and XIII of the decedent's Will are construed to authorize payment of the administrative expenses by the Personal Representatives out of income if they choose to pay such expenses out of income, and to the extent that the Personal Representatives do not choose to pay administrative expenses out of income, such administrative expenses shall be paid out of the residuary share of the estate prior to distribution to the residual beneficiary, as requested in the Petition.

Burke filed the estate's federal estate tax return on November 24, 1982. On the tax return, the entire gross estate was valued at $10,489,753.94. However, the estate claimed deductions totaling $9,747,444.42, leaving a taxable estate of $742,309.52. Included within the total claimed deductions, were charitable deductions totalling $9,662,605.10, of which $8,869,080.10 represented the will's residual bequest to the Foundation. Burke also filed a fiduciary estate income tax return covering income earned by the estate after Williams' death in 1982. On the estate's fiduciary income tax return for 1982, Burke claimed a deduction of $144,441.00 for administrative expenses incurred in administering the estate. With this income tax return, Burke also filed an elective statement under I.R.C. section 642(g) in which the estate waived its right to deduct administrative expenses on the estate's estate tax return.

After auditing the estate tax return, the Commissioner determined that the administrative expenses claimed as a deduction on the estate's income tax return should have been shown on the estate's estate tax return as reducing the charitable deduction which was based upon the residuary clause's bequest to the Foundation. The Commissioner, thus, reduced the amount of the charitable deduction claimed by the estate by $236,536.38—the amount of the administrative expenses plus the estate taxes attributable thereto—and assessed an estate tax deficiency of $80,110.87 against Williams' estate. The estate paid the deficiency and brought suit in the Court of Federal Claims, seeking a refund of $110,717 (the $80,110.87 deficiency plus interest).

In response to both parties' cross-motions for summary judgment, the Court of Federal Claims began its analysis by noting that, under the Florida statute, administrative expenses must be paid out of the principal estate unless the will provides otherwise, i.e., unless the will states that such expenses may be paid out of post-mortem income. Further, noting that it was not bound by the Florida probate court's interpretation of the will, the Court of Federal Claims held that "the will did, in fact, provide for the payment of administrative expenses out of the pre-residue principal" in Article XIII. *Burke,* No. 540–89T, slip op. at 5–6. The Court of Federal Claims, thus, concluded that the administrative expenses of Williams' estate were required to be paid out of the principal estate.

Before the Court of Federal Claims, Burke argued that the charitable deduction attributable to the residuary bequest to the Foundation should not be decreased because, regardless of the Florida statutory requirement, the administrative expenses had in fact been paid out of post-mortem income and the Foundation had accordingly received a donation at least equal to the amount of the residuary. In response, the court held that "post-mortem income cannot be used to increase the amount of a charitable residual legacy, even by indirectly increasing the amount in the residual bequest." *Id.* at 7. Accordingly, the Court of Federal Claims granted the government's motion for summary judgment. It is from this summary judgment that Burke appeals.

---

3. The Edna Sproull Williams Foundation (hereinafter the "Foundation") qualifies as a charity for purposes of federal estate taxation.

## II.

■ On appeal, Burke does not assert that the Court of Federal Claims erred by granting summary judgment over the existence of a genuine issue of material fact. Rather, Burke argues only that the trial court erred as a matter of law. Burke first argues that the Court of Federal Claims erred as a matter of law by construing Williams' will under Florida law as not allowing payment of the estate's administrative expenses out of post-mortem income, particularly in light of the Florida probate court's decision allowing such payment. Burke also argues that the estate's residuary charitable deduction should not be reduced by the amount of the administrative expenses as a matter of law because the estate in fact[4] paid the administrative expenses out of post-mortem income. The Commissioner argues, not surprisingly, that the Court of Federal Claims correctly interpreted the will and that the use of post-mortem income to pay administrative expenses does not alter the result that the residuary charitable bequest must be reduced by the amount of the administrative expenses for federal estate tax purposes.

While we do not find error in the Court of Federal Claims' determination that under Florida law the will required administrative expenses to be paid out of the principal of the estate,[5] we believe that the emphasis on the source of payment allowable under state law shifts the focus of the case from the pertinent question—whether payment of administrative expenses must be accounted for in computing the value of a taxable estate under federal law for federal estate tax purposes regardless of the actual source of payment.

### A.

We have no quarrel with Burke's interpretation of the Florida statute as allowing a decedent to provide for the payment of administrative expenses out of post-mortem income. The Florida statute reflects the reality that often times it may be in the best interest of an estate to pay administrative expenses from post-mortem income instead of from principal. This payment method avoids forcing the personal representative to sell off portions of an estate to cover expenses. For example, emergency sales of personal property such as stocks or real property could unnecessarily deplete the value of the estate.

■ Nonetheless, while state law may allow for various sources of payment for administrative expenses, such allowance does not necessarily affect the treatment of these expenses for federal estate taxation purposes. As our predecessor court has stated, "Generally speaking, state law is determinative of property rights, while the manner and extent to which such rights are taxed are determined by federal law." *Murray v. United States*, 687 F.2d 386, 392 n. 3, 231 Ct.Cl. 481 (1982) (citing *Morgan v. Commissioner*, 309 U.S. 78, 80–81, 60 S.Ct. 424, 425–26, 84 L.Ed. 585 (1940)). In other words, the allowable sources of *payment* for administrative expenses under *state* law does not necessarily affect the source from which the *deduction* for administrative expenses must be made under *federal* law. *See Lyeth v. Hoey, Collector of the Internal Revenue*, 305 U.S. 188, 193–94, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938). Therefore, we must examine the federal estate tax statutes in order to determine if payment of administrative expenses from post-mortem income, as potentially allowed by state law, somehow affects a residuary charitable bequest.

### B.

Section 2001 of the Internal Revenue Code imposes a tax on the transfer of the "taxable

---

4. Whether or not Burke actually paid the estate's administrative costs out of post-mortem income is not a genuine issue of material fact in light of our discussion below. For the purpose of our analysis, we must assume that Burke did in fact use post-mortem income to pay the administrative expenses.

5. Addressing the effect of a state court probate determination where the matter decided is determinative of federal estate tax consequences, the Supreme Court has stated, "[W]hen the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

estate" of every decedent who is a citizen or resident of the United States. I.R.C. § 2001.[6] To evaluate a decedent's taxable estate for purposes of section 2001, the administrator must first ascertain the value of the decedent's "gross estate." This value is defined by statute as "the value *at the time of death* of all property, real or personal, tangible or intangible, wherever situated." I.R.C. § 2031(a) (emphasis added).[7] The taxable estate is then calculated by subtracting any amounts qualifying as deductions under sections 2053–2056 from the value of the decedent's gross estate. I.R.C. § 2051. With respect to this case, the deductions at issue are those provided in section 2053 for administrative expenses and in section 2055 for charitable donations.

Section 2051 allows the deduction of various amounts "from the value of the gross estate" in order to determine the taxable estate. One of these deductible amounts is provided for in section 2053 which states that "the value of the taxable estate shall be determined by deducting from the value of the gross estate [administrative expenses] as are allowable by the laws of the jurisdiction ... under which the estate is being administered." Although section 2053 permits state law to determine what administrative expenses are "allowable," how section 2053 treats the allowable administrative expenses for estate tax deduction purposes is a federal question. *See Lyeth,* 305 U.S. at 193–94, 59 S.Ct. at 158.

■ Section 2051 defines the taxable estate and the deductions used to determine the taxable estate in terms of the gross estate. *See* Treas.Reg. § 20.2051–1 (taxable estate determined by subtracting total amount of deductions "from the total amount which must be included in the gross estate"). Likewise, section 2053, by its plain language, defines the deduction for administrative expenses in terms of the gross estate. Reading

sections 2031, 2051, and 2053 together, the gross estate, which is the value of the decedent's estate at the time of death, is the sole source from which the administrative expenses may be deducted.[8] Thus, the deduction of administrative expenses as provided for by federal law—as opposed to the actual payment of administrative expenses as allowed under state law—must come from, i.e., be accounted for within, the gross estate. *See Estate of Street v. Commissioner,* 974 F.2d 723, 728–29 (6th Cir.1992); *Alston v. United States,* 349 F.2d 87, 88 (5th Cir.1965); *Estate of Horne v. Commissioner,* 91 T.C. 100 (1988). In other words, regardless of the source of payments for administrative expenses, such payments are charges against the gross estate and must be accounted for accordingly. *See Estate of Street,* 974 F.2d at 728–29 (if estate income is used to pay administrative expenses so as to increase the residue passing to the surviving spouse, the value of the additional residue cannot be included in the amount for the marital deduction); *Alston,* 349 F.2d at 88 ("Administrative expenses must be deducted from the gross estate even though paid out of postmortem income."); *Rifkind v. United States,* 5 Cl.Ct. 362, 374 (1984) ("Insofar as the New York probate court allows an expense of administration to be paid out of post-mortem income, the accounting practice is at fatal variance with the entrenched principle of federal estate tax law that a decedent's estate must be valued at date of death ... for purposes of deducting later-incurred administration expenses.").

■ In sum, when a decedent dies, a finite amount known as the gross estate is legally created. Any deductions for expenses incurred in administering the estate are theoretically derived from this amount and, regardless of the actual source of payment, must be accounted for within the gross estate. *See Alston,* 349 F.2d at 88–89; *Rif-*

---

6. Unless otherwise specified, the statutes and regulations cited hereinbelow are those covering 1982.

7. Section 2032 provides an alternative valuation scheme which does not apply in this case.

8. While the tax code apparently allows an estate to elect to *claim* a deduction for administrative expenses on the estate's income tax return instead of on the estate's estate tax return, after filing a waiver under section 642(g), both parties have stipulated that section 642(g) is wholly immaterial to the determination of the charitable deduction to which the present estate is entitled.

*kind,* 5 Cl.Ct. at 374. *See also* Beckwith, 261–3d *Tax Management Portfolio: Estate and Gift Tax Charitable Deductions* (BNA), at A–23 – A–24; 4 J. Rabkin & M. Johnson, *Federal Income, Gift, and Estate Taxation,* § 59.07, at 5985 (1992).

■ Burke argues that the only relevant provision of the tax code is section 2055 which allows a deduction from the decedent's gross estate of amounts given to a qualifying charity. Per Burke, for purposes of the section 2055 deduction, the only requirement is that the charity actually receive the amount claimed as the deduction. Burke argues that since the Foundation received more than the amount claimed as a deduction under section 2055 over the probate period, the requirements for claiming a deduction are satisfied.

However, the fact that the charitable deduction taken on Burke's federal estate tax return was less than the actual amount received by the charity over the seven-year probate period is not determinative. The relevant inquiry is the amount received by the charity *under the will,* i.e., the amount of the gross estate that passed to the charity. That the charitable donation was augmented by post-mortem income, resulting in an overall charitable donation of an amount greater than the estate tax deduction claimed, does not increase the amount of the charitable bequest under the will.[9]

■ Under Williams' will, the Foundation received the residue of the estate. Therefore, the value of the gross estate that passed to the Foundation for which the estate may claim a charitable deduction under section 2055, is the amount remaining in the estate after Burke had accounted for all of the obligations of the estate accruing at the time of death. These obligations included payment of the administrative expenses for which the estate claimed a deduction, albeit on the estate's income tax return. In calculating the residue, the amount of the gross

estate passing to charity under the will, Burke failed to take into account the reduction necessitated by administrative expenses. This was error because, for purposes of federal estate taxation, the gross estate is obligated to pay those expenses. In essence, Burke would have us indirectly increase the value of the gross estate by allowing him to use post-mortem income to pay the obligations of the gross estate. While, as we have previously noted, it may be beneficial or convenient to pay such obligations out of post-mortem income, the post-mortem income so used does not itself become part of the gross estate. The result Burke seeks would allow the estate to claim two deductions for the exact same portion of the gross estate as being both an administrative expense deductible under section 2053, which Burke elected to claim on the estate's income tax return, and a charitable donation deductible under section 2055, which Burke claimed on the estate tax return.

■ The amount of the charitable deduction claimed by Williams' estate was properly reduced by the amount of administrative expenses claimed as a deduction on the estate's fiduciary income tax return because, for federal estate taxation purposes, only this lesser amount was paid to the charity *from the gross estate.* The additional amount paid to charity over the probation period was post-mortem income for which estate received a deduction on its federal income tax returns.

During the pendency of this case, Burke submitted a recent decision, *Estate of Warren v. Commissioner,* 981 F.2d 776 (5th Cir. 1993), which he offers in support of his contention that administrative expenses may be paid from post-mortem income without diminishing the amount of the residue passing to charity. Other than the law as determined by the United States Supreme Court, we are bound only by the decisions of the

9. In discussing the amount of residue of an estate qualifying for the marital deduction under section 2056, the Senate Report provides that "[i]f the decedent leaves the residue of his estate to the surviving spouse and she pays, or if estate income is used to pay, claims against the estate so as to increase the residue, such increase in the residue is acquired by purchase and not bequest.

Accordingly, the value of any additional part of the residue passing to the surviving spouse cannot be included in the amount for the marital deduction." S.Rep. No. 1013, 80th Cong., 2d Sess. II–6 (1948). While the above provision is framed in the context of the marital deduction, the logic is no less applicable to the present case.

United States Court of Claims and the United States Court of Customs and Patent Appeals, *see South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982) (*in banc*). Thus, we need only consider the Fifth Circuit's decision in *Warren* for its persuasiveness. For the reasons stated in the discussion below, *Warren* does not alter the outcome of this case.

In *Warren,* the decedent's will established two residuary charitable trusts which were to pay annuities to the charities each year equal to eight and one-half percent of the initial fair market value of the trust assets. After twenty years, the trust assets were to be divided among Warren's children and grandchildren. The potential for dispute becomes readily apparent—the higher the payment to the charities throughout the life of the trust, the lower the value of the trust assets which will subsequently be divided among the children and grandchildren. The decedent's estate incurred substantial administrative costs, which, if paid in total from the residuary, would have established relatively small annuity payments for charities and relatively large trust assets at the end of twenty years to be divided among the children and grandchildren.

The charities brought suit in the probate court claiming that the estate's administrative expenses should be paid out of post-mortem income in order to preserve the principal of the trust. The parties settled the case and the probate court entered an agreed final judgment. The parties' agreement provided that 27½ percent of the administrative expenses would be charged to the estate's corpus and 72½ percent of the administrative expenses would be charged to residuary post-mortem income.[10]

After auditing the estate's estate tax return, the Commissioner asserted an estate tax deficiency. Before the Tax Court, the Commissioner argued that the estate had improperly failed to decrease its charitable donation deduction by the full value of the administrative expenses. The estate argued that, according to the agreed settlement judgment entered by the probate court, the charitable donation claimed on the estate tax return had to be reduced only by 27½ percent of the administrative expenses. The Tax Court determined that it was not bound by the probate court's judgment and agreed with the Commissioner.

On appeal, the Fifth Circuit concluded that the *Bosch* rule, that a state trial court probate decision does not control the application of the federal estate tax statute,[11] was limited to situations in which the state court's decision was the result of non-adversarial proceedings. Therefore, per the Fifth Circuit, the Tax Court was bound by the state probate court's decision because it resulted from a bona fide adversarial proceeding between the various beneficiaries under the will. The Fifth Circuit also found it significant that the government failed to submit evidence supporting its allegation that the settlement between the parties was structured to avoid federal tax liability.

In the case at bar, there was no *bona fide* adversarial proceeding leading to the Florida probate court's decision to allow payment of administrative expenses out of post-mortem income. Therefore, even assuming that *Bosch* is limited to non-adversarial situations, it is applicable to this case. Moreover, neither of the parties in this case contends that the Court of Federal Claims or the Federal Circuit should be bound, as opposed to merely influenced by the Florida probate court's decision.

Even if the decision in *Warren* were applicable to the present case we would decline to follow it. By allowing state court decisions to bind federal courts on issues which are clearly federal tax law issues, *Warren* would subject the federal tax system to "the whim of the state courts or legislatures." *Estate of Street,* 974 F.2d at 728. Further, the decision in *Warren* would allow an agreement between the beneficiaries under a will

---

10. These percentages were apparently based on a Texas trust statute which allocates 27½ percent of the income earned by trusts comprising oil and gas assets to the principal of the trust and 72½ percent to income earned by the trust. Texas Trust Code, Tex.Prop.Code Ann. § 113.107(d) (West 1984).

11. *See supra* note 5.

to dictate federal estate tax law. While the settlement in *Warren* was undoubtedly the result of adversarial proceedings, it is hard to imagine that reducing federal estate tax consequences was not at least one aspect of the settlement agreement. Decreasing the amount of taxes owed would increase the overall post-tax amount of money which could be divided by both of the negotiating parties. Moreover, the Fifth Circuit's holding in *Warren* appears contra to its earlier decision in *Alston v. United States, supra*, in which the court held that "administrative expenses must be deducted from the gross estate even though paid out of post-mortem income." *Alston*, 349 F.2d at 88.

## CONCLUSION

The Court of Federal Claims correctly held that, as a matter of federal law, Burke could not indirectly increase the amount of the charitable residual legacy by paying administrative expenses out of post-mortem income. Accordingly, we affirm the trial court's decision that the Commissioner correctly reduced the estate's claimed charitable deduction to account for the amount of the administrative expenses deducted from the estate's income taxes and that Williams' estate is not entitled to a refund.

AFFIRMED.