United States Court of Appeals,

Eleventh Circuit.

No. 94-8287.

ESTATE OF Otis C. HUBERT, Deceased, C & S Soveran Trust Company (Georgia), N.A., a National Banking Association, Co-Executor, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

Sept. 12, 1995.

Appeal from a Decision of the United States Tax Court (Georgia Case). (Tax Court No. 22333-90).

Before DUBINA, Circuit Judge, RONEY and ESCHBACH[*], Senior Circuit Judges.

RONEY, Senior Circuit Judge:

On appeal by the Government in this estate tax case, we affirm the United States Tax Court holding that the marital and charitable deductions are to be reduced only by the portion of administration expenses allocated to principal and not by amounts allocated to income. *Estate of Otis C. Hubert v. Commissioner of Internal Revenue,* 101 T.C. 314, 1993 WL 414716 (1993). This holding brings us in conflict with the two other circuits which have decided the issue. *Estate of Street v. Commissioner,* 974 F.2d 723 (6th Cir.1992); *Burke v. United States,* 994 F.2d 1576 (Fed.Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993). The Tax Court, in a reviewed decision, concurred in by 15 of the 17 Tax Court judges, specifically declined to accept the reasoning in *Street* in a comprehensive opinion.

---

[*]Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

Since the Tax Court wrote a careful analysis of every argument that is made by the Commissioner on this appeal, and we agree with the reasoning in that opinion, we simply attach that part of the opinion found at 101 T.C. at 320-30 as an Appendix and adopt it as our own, as completely as if we had set it forth herein.

We note just four points that may assist in understanding the analysis made in the portion of the Tax Court opinion attached.

*First,* the Tax Court was confronted with other issues not raised on this appeal so that the portion attached deals only with the issue on this appeal. Critical to understanding that opinion, however, is the following footnote on page 2 of the original opinion:

> We are using the terms "marital portion" and "charitable portion" to mean the amounts received by the spouse and the charity, respectively, under the settlement agreement. Pursuant to the settlement agreement, the marital and charitable portions include income accumulated to the date of distribution. The terms "marital portion" and "charitable portion" should not be confused with the terms "marital share" and "charitable share" or "marital deduction" and "charitable deduction." 101 T.C. at 350 n. 1.

*Second,* this case involves the $30,000,000 estate of Otis C. Hubert, a Georgia resident. There was considerable other litigation in connection with the estate. The settlement agreement referred to in the portion of the opinion published here was the result of some prior litigation.

*Third,* Georgia law authorizes allocation of expenses to income rather than principal, if the will so provides. Ga.Code Ann. §§ 53-2-101, 53-15-3 (Michie 1982). Hubert's will authorized such an allocation. *See Estate of Warren v. Commissioner,* 981 F.2d 776 (5th Cir.1993) (allocation of administrative expenses to income

allowed by state law did not reduce the charitable deduction).

*Fourth,* the estate included a generous amount of income producing property. From 1986 until 1991, the estate generated over $4,500,000 of income and incurred over $2,000,000 in administration expenses. The executors allocated $506,989 to the principal of the estate and paid the rest of the administration expenses from post-death income and deducted it on the estate's income tax returns.

Our reasons for disagreeing with the Sixth Circuit's analysis in *Street* are the same as those which addressed that case in the Tax Court opinion. The later decided case of *Burke* by the Federal Circuit simply relied on *Street* and added nothing new to the discussion.[1]

---

[1]With due respect to the dissenting opinion, the two cases cited as binding authority are inapplicable to this case.

In *Ballantine v. Tomlinson,* 293 F.2d 311 (5th Cir.1961), neither the will nor Florida law permitted the expenses there involved to be paid out of income. "The decedent, by his will directed that the wife's share of the residuary estate should not be charged with any part of the estate tax. *There was no such provision or other direction with respect to administration expenses or other charges against the estate.*" (emphasis added). 293 F.2d at 312. "[W]e find nothing in the Florida statutory law requiring payment of administration expenses from estate income. We are likewise unable to agree ... (that a state case) ... requires that administration expenses be paid from estate income." 293 F.2d at 314. Unlike *Ballantine,* the Georgia law in this case provided for the payment of these expenses from income if the will permitted.

Likewise in *Alston v. United States,* 349 F.2d 87 (5th Cir.1965), though Georgia law permitted it, there was no provision in the will for the payment of the administration expenses there involved from income. Georgia law required them to be paid from the residue of the estate. "Although there is no specific reference in Georgia statutes to administration expenses as such, there are provisions that, *unless otherwise directed,* debts should be paid out of the

AFFIRMED.

## APPENDIX

*ESTATE OF OTIS C. HUBERT, DECEASED, C & S/SOVRAN TRUST COMPANY (GEORGIA), N.A., A NATIONAL BANKING ASSOCIATION, CO-EXECUTOR, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.* (Docket No. 22333-90, October 19, 1993, 101 T.C. 314, 320-30 [1993 WL 414716]).

*Allocation of Expenses*

The second issue for decision is whether the marital and charitable deductions must be reduced by expenses allocated to income of the estate.

The 1982 will gave the executors of decedent's estate the power "to charge any expenses against income or principal or apportion the same." The executors allocated $506,989 as funeral and administration expenses to the principal of the estate. All other administration expenses were allocated to income.

Respondent argues that the amount of a marital or charitable deduction must be reduced by the entire amount of administration expenses, whether those expenses are allocated to principal or to income. Respondent cites section 20.2056(b)-4(a), Estate Tax Regs., and the legislative history of section 2056 as support for the proposition. In addition, respondent argues that the courts have "uniformly recognized" that administration expenses reduce the marital and charitable deductions regardless of whether those expenses are paid out of income or principal. Respondent contends that both Georgia law and the language of the settlement agreement

residuum." (emphasis added). 349 F.2d at 88.

There is nothing in either opinion that would indicate a result contrary to the one the tax court reached in this case.

also mandate such a result.  We disagree.

Before considering this issue in detail, it is helpful to consider an overview of the operation of estate accounting and estate taxes.  The starting point for determining Federal estate taxes is the date-of-death (or alternate valuation date) value of the property of the estate.  Deductions are allowed for various expenses of the estate, as well as for claims against the estate and bequests to the decedent's spouse and to charity.  Income earned by the estate has no effect on the estate for Federal estate tax purposes.  It is accounted for separately in the estate's probate account and is taxed separately on the estate's Forms 1041.

Executors have been granted significant flexibility in accounting for the estate's administration expenses, both for estate and income tax purposes, and for probate accounting purposes.  Congress has granted the executor the option of deducting administration expenses on either the estate return, Form 706, or the fiduciary income tax return, Form 1041.  Sec. 642(g). In addition, many States give the decedent the option of authorizing the executor to allocate such expenses to principal or to income at the executor's discretion.  If the administration expenses were paid out of principal, they would reduce the amount of such principal received by the beneficiaries and would reduce the marital and charitable deductions.  However, we conclude that the administration expenses that are allocable to income in this case do not change the amount of the estate principal received by the spouse or the charity and do not reduce the marital and charitable deductions.  Administration expenses are incurred and

accrue during administration and should not be confused with the claims against the estate which existed and accrued at the date of death.

Our conclusion that the marital and charitable deductions are not reduced by payment of administration expenses allocated to income does not lead to a double deduction in violation of section 642(g). Section 642(g) prohibits a deduction under section 2053 or 2054 for any administration expenses deducted on the estate's income tax return. However, section 642(g) does not prohibit or reduce deductions under section 2055 or 2056. The deductions under sections 2055 and 2056 are based on the date-of-death value of the property received by the charity and the spouse from the gross estate. The executor's ability to preserve the value of the marital and charitable bequests by allocating administration expenses to income is in no way barred by section 642(g).

The allocation of the expenses in the case before us is governed by Georgia law. Georgia law authorizes allocation of expenses to income rather than principal, if provided in the will. Ga.Code Ann. §§ 53-2-101, 53-15-3 (Michie 1982). The 1982 will authorized such an allocation, and this provision was not affected by the settlement agreement. To the extent the executor exercised its discretion and allocated administration expenses to income, the marital and charitable deductions are not reduced by payment of those expenses.

Respondent argues that section 20.2056(b)-4(a), Estate Tax Regs., controls this question. That section states, in relevant part:

Marital deduction; valuation of interest passing to surviving spouse.—(a) *In general.* * * * The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse, the same principles being applicable as if the amount of a gift to the spouse were being determined. *In determining the value of the interest in property passing to the spouse* account must be taken of the effect of any material limitations upon her right to income from the property. An example of a case in which this rule may be applied is a bequest of property in trust for the benefit of the decedent's spouse but the income from the property from the date of decedent's death until distribution of the property to the trustee is to be used to pay expenses incurred in the administration of the estate. [Emphasis added.]

We do not interpret section 20.2056(b)-4(a), Estate Tax Regs., as mandating a setoff against the marital deduction for administration expenses allocable to income. That section is merely a valuation provision which requires material limitations on the right to receive income to be taken into account when valuing the property interest passing to the surviving spouse. The fact that income from property is to be used to pay expenses during the administration of the estate is not necessarily a material limitation on the right

APPENDIX—Continued

to receive income that would have a significant effect on the date-of-death value of the property of the estate.

On the facts before us, we find that the trustee's discretion to pay administration expenses out of income is not a material limitation on the right to receive income. Under section 2056(b)(4) and section 20.2056(b)-4(a), Estate Tax Regs., the value of the interest passing to the spouse and the effect of any encumbrance on that interest shall be determined "as if the amount of a gift to the spouse were being determined." Therefore, we look

to the gift tax provisions and consider how they treat the payment of expenses out of the income of a trust that was given to a spouse. Under section 2523(e), in order for a donor to be entitled to a deduction for a gift in trust to his spouse over which the spouse has a general power of appointment, the spouse must be entitled to all of the income from the trust. Under section 25.2523(e)-1(f)(3), Gift Tax Regs., a spouse is considered to receive all of the income from a trust even if "trustees' commissions, and other charges" are paid out of income, provided the spouse is not deprived of substantial beneficial enjoyment. That section is similar to section 20.2056(b)-(5)(f)(3), Estate Tax Regs. In interpreting those sections, respondent has considered the effect of a power "To charge to income or principal, executor's or trustee's commissions, legal and accounting fees, custodian fees, and similar administration expenses" on the marital deduction. Respondent concluded that such a power "does not result in the disallowance or *diminution* of the marital deduction." Rev.Rul. 69-56, 1969-1 C.B. 224 (emphasis added). While we recognize that the revenue ruling is not binding precedent, it does present respondent's position on this subject. *Crow v. Commissioner,* 85 T.C. 376, 389 [1985 WL 15387] (1985).

In the case before us, the power is essentially the same as the power in the revenue ruling. Moreover, the income used to pay administration expenses is insubstantial compared to the lifetime of income Mrs. Hubert will receive from the property. Therefore, she is not deprived of substantial beneficial enjoyment, and she would be treated, under section 25.2523(e)-1(f)(3), Gift Tax Regs.,

as having received all of the income from the trust. If Mrs. Hubert is treated as having received all of the income from the trust, there can be no material limitation on her right to receive income.

We also reject respondent's interpretation of the legislative history of the marital deduction, which states that *claims* against the estate paid out of income increase the residue by purchase, not bequest, and therefore "the value of any such additional part of the residue passing to the surviving spouse can not be included in the amount of the marital deduction." S.Rept. 1013 (Part II), 80th Cong., 2d Sess. (1948), U.S.Code Cong. and Admin.News 1948 p. 1163, 1228, 1948-1 C.B. 331, 335. The Senate report describes the result only if income is use to pay *claims against the estate;* it does not discuss administration expenses at any point. There is a clear distinction between claims against the estate and administration expenses which are allocable to income, and this distinction mandates different treatment of the two. Claims against the estate are, by definition, in existence at the date of death; therefore, by their very nature, claims against the estate relate to corpus and must be charged thereto. By contrasts, administration expenses come into existence only after the death of the decedent and may relate to both income and corpus. As a result, administration expenses logically can be charged to either income or corpus. Here they were charged to income in accordance with the will and Georgia law. Accordingly, the legislative history cited by respondent does not control the treatment of administration expenses in the case before us.

This Court has spoken on this issue in *Estate of Richardson v. Commissioner,* 89 T.C. 1193 [1987 WL 257908] (1987), and *Estate of Street v. Commissioner,* T.C.Memo 1988-553 [1988 WL 128662], aff'd in part and rev'd in part, 974 F.2d 723 (6th Cir.1992). In *Estate of Richardson,* the decedent left to his wife the amount of his residuary estate necessary to maximize all of his estate tax deductions in order to make his estate nontaxable for Federal estate tax purposes. The decedent's executors were given the power to allocate expenses between income and principal. Respondent argued that the marital deduction should be reduced by the amount of interest payable on the estate's Federal estate taxes and State inheritance taxes, even though the executors had allocated the interest to income.

We concluded: "Whether an expenditure on behalf of an estate is chargeable to principal, or the income produced thereby, depends on the law of the State wherein decedent was a resident at the time of his death, or upon the terms of decedent's will." *Estate of Richardson v. Commissioner, supra* at 1201. In that case, there were no provisions of State law dictating where the interest should be charged. Therefore, we looked to the language of the will and determined that, based on the decedent's intent to minimize taxes, the executors had the power to charge the interest against income and, thereby, not reduce the marital deduction.

In *Estate of Street,* on similar facts we held that Tennessee law permitted a decedent to grant the power to allocate administration expenses between income and principal. We held that the marital deduction was not reduced by the amount of the expenses

allocated to income.

We note that the fact that the marital bequest in *Estate of Street* was in trust did not affect our reasoning in that case. Respondent argues that the fact of the trust should make a difference, because if Mrs. Hubert is receiving only an income interest and part of the income is used to pay expenses, the value of the interest passing to Mrs. Hubert is reduced. However, respondent ignores the fact that, because Mrs. Hubert has a general power of appointment over one of the trusts and the other trust is a qualified terminable interest trust, Mrs. Hubert is treated as having received the entire value of both trusts, not just the income portions.

On appeal, the Court of Appeals for the Sixth Circuit reversed our holding in *Estate of Street* with regard to administration expenses, concluding that payment of such expenses reduces the marital deduction whether the payment is allocated to income or to principal. However, the court upheld our holding that the payment of interest on estate taxes and inheritance taxes allocated to income does not reduce the marital deduction. *Estate of Street v. Commissioner,* 974 F.2d 723 (6th Cir.1992), aff'g in part, rev'g in part and remanding.[2]

On the issue of the administration expenses, the Court of

_____

[2]Respondent has now accepted the holding that the payment of interest on estate and inheritance taxes allocated to income does not reduce the marital deduction. Rev.Rul. 93-48, 1993-25 I.R.B. 9. Respondent has specifically limited her change in position to payments of interest and has reaffirmed her position regarding all other administration expenses. As we explain below, we see no valid distinction between interest and other administration expenses.

Appeals determined that section 20.2056(b)-4(a), Estate Tax Regs., was controlling. The Court of Appeals concluded that the regulation mandates a setoff against the marital deduction for administration expenses paid from income. The court reasoned:

> Income earned by the estate during * * * [the administration] period builds up the marital share. Expenses paid from income during this period have the effect of decreasing the amount of estate property distributable to the spouse. Therefore, the payment of administration expenses from income must operate to reduce the size of the marital deduction, otherwise the spouse would receive a deduction which exceeded the amount which was actually in the estate, and available for distribution. * * * [*Id.* at 727].

The court found support for this reasoning in the legislative history of the marital deduction.

The Court of Appeals distinguished administration expenses from interest on estate and inheritance taxes on two grounds. First, citing *Estate of Richardson,* the court stated that the interest on taxes accrues after death, whereas administration expenses "accrue at death." As a result, the court determined that payment of interest on taxes from estate income does not affect the principal of the estate as it existed at the time of decedent's death, but payment of administration expenses from such income "will serve to build up the gross estate." *Id.* at 727. Second, the court noted that section 20.2056(b)-4(a), Estate Tax Regs., specifically mentions administration expenses in it example, but it does not mention interest on taxes. Therefore, the court held that the regulation was inapplicable to interest on taxes. *Id.* at 729. Thus, the Court of Appeals concluded that payment of administration expenses from income of the estate should reduce the marital deduction, but payment of interest on estate and inheritance taxes

from income should not reduce the marital deduction. See also *Burke v. United States,* 994 F.2d 1576 (Fed.Cir.1993), and *Fisher v. United States,* 28 Fed.Cl. 88 (1993), which rely on the rationale of *Estate of Street* with respect to administration expenses.

Respectfully, we disagree with the reasoning of the Court of Appeals and decline to follow its decision in *Estate of Street.* As stated above, we interpret section 20.2056(b)-4(a), Estate Tax Regs., to be a valuation provision. Therefore, unlike the Court of Appeals, we find that the regulation does not control the case before us. In addition, as noted previously, we conclude that the legislative history of the marital deduction does not mandate a different conclusion.

Moreover, we take issue with the Court of Appeals' analysis of the effect of income and expenses on the marital share. The court stated that income earned on estate property increases the marital share, and presumably the marital deduction, leading to a deduction greater than the amount distributed if payment of expenses from income does not reduce the marital deduction. However, income earned on estate property is not included in the gross estate. *Alston v. United States,* 349 F.2d 87 (5th Cir.1965). As a result, under section 2056(a), such income does not lead to an increase in the amount of marital deduction requiring a corresponding decrease for payment of administration expenses chargeable against income of the estate.

Finally, we disagree with the Court of Appeals' distinction between interest on estate and inheritance taxes and administration expenses. The fact that section 20.2056(b)-4(a), Estate Tax Regs.,

explicitly refers to administration expenses but does not mention interest on taxes is not relevant because the reference to administration expenses is "*An* example of a case in which this rule *may* be applied." Sec. 20.2056(b)-4(a), Estate Tax Regs. (emphasis added). Application of the regulation, when appropriate, is clearly not limited to administration expenses. Regardless of the regulation's treatment of administration expenses and interest on taxes, it does not provide a useful distinction between the two.

In addition, administration expenses and interest on taxes cannot be distinguished according to the time at which they accrue. Both accrue after the date of death. Administration expenses, by their very nature, are incurred over the entire period of the estate's administration and can vary significantly from estate to estate. As a result, administration expenses are too uncertain at the date of death to accrue at that time. Our analysis in *Estate of Richardson v. Commissioner,* 89 T.C. 1193 [1987 WL 257908] (1987), therefore applies to administration expenses as well as to interest on taxes, and we will follow our holding in that case.

Both respondent and the Court of Appeals cite *Estate of Roney v. Commissioner,* 33 T.C. 801 [1960 WL 1078] (1960), aff'd, 294 F.2d 774 (5th Cir.1961), as support for their positions. In *Estate of Roney,* the decedent left the residue of his estate to his wife. The will made no provision as to the source of payment of administration expenses. The executor deducted the administration expenses on the estate's fiduciary income tax returns and did not reduce the marital deduction on the estate tax return by the amount of those expenses. In that case, we looked to Florida law and

determined that the executor was required to pay administration expenses out of the residuary estate.  Since the residuary estate does not include income, we determined that the marital deduction should be reduced by the amount of the expenses because the amount of principal received by the spouse was reduced to that extent.

The holding in *Estate of Roney* is not inconsistent with the result we reach in the case before us.  We merely held in *Estate of Roney* that when administration expenses are required to be allocated to principal, the marital deduction is reduced by the amount of those expenses.  Whether the deduction for the administration expenses is taken on Form 706 or Form 1041 is immaterial and irrelevant.  See also  *Alston v. United States, supra.*

Although *Estate of Wycoff v. Commissioner,* [59] T.C. 617 [1973 WL 2679] (1973), aff'd, 506 F.2d 1144 (10th Cir.1974), was not cited by either party, we find it appropriate to discuss that case here.  In *Estate of Wycoff,* the decedent's will provided:

> all inheritance, estate and transfer taxes due by reason of my death shall be paid out of that portion of my estate which is not included in the Marital Trust to be administered by my Trustee, unless, in the best business judgment and sole discretion of my executor, such taxes could be more prudently paid from any assets in my estate without respect to what is or is not included in the Marital Trust * * * [*Id.* at 619.]

Based upon the above election available to the executor, we concluded that the marital trust might be charged with those taxes and that the marital deduction was accordingly reduced.  We distinguish that case on its facts.

The executor's choices in *Estate of Wycoff* were between two shares of the estate, the marital trust and the nonmarital trust,

both of which were included in the gross estate, and not between principal and income, where only principal would be included in the gross estate and income would be accounted for and taxed separately, as noted above.

We decline to read *Estate of Wycoff* more broadly to make the result depend entirely on the discretion of the executor. We will confine *Estate of Wycoff* to its facts and to the more narrow interpretation which we believe was intended by the Court.

Respondent cites Ga.Code Ann. section 53-2-101 (Michie 1982) as support for the contention that Georgia law requires expenses to be allocated to principal rather than income. However, that section only requires allocation of expenses to the principal if no other provisions are made by the will. Ga.Code Ann. section 53-15-3 (Michie 1982) allows decedents to grant their executors the power to allocate expenses between principal and income. Decedent, in this case, clearly granted such power to his executors.

Finally, we conclude that the settlement agreement did not alter decedent's grant of the power to allocate expenses. The settlement agreement merely set forth a formula for determining the final amounts of both income and principal to be received by Mrs. Hubert and the charity. That this is the case is demonstrated by the fact that both parties agree the marital portion, as calculated under the settlement agreement, should be reduced by income in order to determine the marital deduction. The fact that the settlement agreement provided for allocation of expenses between the marital and charitable portions does not preclude the executors from allocating those expenses to income rather than principal

within those portions pursuant to the 1982 will.

Respondent cites a variety of cases in support of the contention that the marital and charitable deductions must be reduced by expenses. However, none of those cases is on point. They deal with situations in which the will made no provision for the allocation of expenses and, therefore, the statute controlled the allocation. Here, we clearly have a provision in the will which controls the allocation.

We hold that the allocation of petitioner's expenses to income was permitted by Georgia law, and the marital and charitable deductions are not reduced by expenses so allocated.

DUBINA, Circuit Judge, dissenting:

I.

Because I am convinced that the majority has erred in adopting the tax court's analysis in this case, I respectfully dissent. I disagree with the majority's holding for two reasons: First, the holding disregards fundamental federal estate taxation principles in light of state law which allows administration expenses to be paid out of post-mortem income, and second, it contravenes binding circuit precedent.

II.

In this case, both the decedent's will and relevant state law allowed administrative expenses to be paid out of post-mortem income; however, "the allowable sources of payment for administration expenses under state law does not necessarily affect the source from which the deduction for administrative expenses must be made under federal law." *Burke v. U.S.,* 994 F.2d 1576,

1580 (Fed.Cir.) (emphasis in original), *cert. denied, --- U.S. ----, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993) (citing *Lyeth v. Hoey, Collector of the Internal Revenue,* 305 U.S. 188, 193-94, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938)).

Section 2031 of the Internal Revenue Code ("I.R.C.") defines the value of the gross estate as "the value at the time of [the decedent's] death."[1] At the decedent's death, the estate has the obligation to pay administration expenses. I.R.C. § 2053; *Ballantine v. Tomlinson,* 293 F.2d 311, 312 (5th Cir.1961).[2] Also, contrary to the Tax Court's assertion, administration expenses, although unascertained on the date of death, are deemed to accrue at the decedent's death. *Alston v. United States,* 349 F.2d 87, 88 (5th Cir.1965) ("at the decedent's death his estate had the obligation of paying estate taxes, debts, charges and expenses of administration") (citation omitted). *See also Estate of Street v. Commissioner,* 974 F.2d 723, 727 (6th Cir.1992). "[R]egardless of the source of payments for administration expenses, such payments are charges against the gross estate and must be accounted for accordingly." *Burke,* 994 F.2d at 1581 (citing *Estate of Street,* 974 F.2d at 728-29; *Alston,* 349 F.2d at 88; *Rifkind v. United States,* 5 Cl.Ct. 362, 374 (1984)).

Using income to pay administration expenses can be of great benefit to an estate, especially where no other liquid assets are

---

[1]I.R.C. § 2032 provides an alternative valuation scheme which is not relevant to this case.

[2]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

available to pay the expenses; yet, income earned by an estate during administration is not part of the gross estate. *See Alston,* 349 F.2d at 88; *Fisher v. United States,* 28 Fed.Cl. 88 (Fed.Cl.1993). Allowing administration expenses to be paid out of income earned during the administration of the estate, without reducing the gross estate by the amount of the charges against it, has the effect of increasing the gross estate by the amount of post-mortem income. *See Alston,* 349 F.2d at 89.

III.

The *Alston* case is binding precedent. At the time *Alston* was decided, state law required administration expenses to be paid out of the residuum of the estate.[3] The holding of *Alston,* however, was based upon an interpretation of the statutory definition of the gross estate, which is a matter of federal law. *See id.*

In *Alston,* the residue of the decedent's estate was left to a qualified charity. The executors of the estate filed an estate tax return with a gross estate of approximately $5.9 million. One thousand forty-two dollars and forty-one cents ($1,042.41) in funeral and administration expenses were deducted along with other deductions, leaving an amount of approximately $4.4 million in residue for the charitable deduction. *Id.* at 88. The next year, the executors filed the estate's income tax return, claiming administration expenses totalling $66,827.33 as deductions. The executors had charged this amount against the estate's principal account. Because the executors had failed to deduct these

---

[3]There was no specific state statute regarding administration expenses, but the court determined that the source of payment of the expenses was the residuum of the estate.

administration expenses from the gross estate in computing the residue for the charitable deduction, the Commissioner asserted an estate tax deficiency. Thereafter, the executors changed their book entries to charge the expenses to the estate's income, rather than the principal, paid the deficiency, and instituted a suit to recover the amount of the deficiency. *Id.*

The executors argued that "where expenses of administration are paid out of post-mortem income, the amount of corpus available for charity is not diminished by such payments." *Alston,* 349 F.2d at 89. The court rejected the executors' argument and held that the source of the deduction was the gross estate and that "administration expenses must be deducted from the gross estate even though paid out of post-mortem income." *Id. See also Ballantine,* 293 F.2d at 313 (the gross estate must be reduced by the amount of the administration expenses even though those expenses are met from another source). The court reasoned that the "effect of yielding to the executors' argument here would be to increase the amount of the gross estate by the amount of post-mortem income—a result directly contrary to the *statutory definition of gross estate.*" *Alston,* 349 F.2d at 89 (emphasis added).

We are bound by the *Alston* court's interpretation of federal law. Moreover, we are bound by precedent which specifically rejects the Tax Court's interpretation of the relevant legislative history of the marital deduction. *See Ballantine,* 293 F.2d at 313. The legislative history provides:

The interest passing to the surviving spouse from the decedent is only such interest as the decedent can give. If the

decedent by his will leaves the residue of his estate to the surviving spouse and she pays, or if the estate income is used to pay, *claims* against the estate so as to increase the residue, such increase in the residue is acquired by purchase and not by bequest.

S.Rep. No. 1013 (Part II), 80th Cong., 2d Sess. (1948), reprinted in 1948 U.S.C.C.A.N. 1163, 1228 (emphasis added). In the present case, the Tax Court erroneously held that administration expenses are not "claims" because they come into existence only after the death of the decedent. Going further, the court distinguished administration expenses from claims against the estate reasoning that administration expenses relate to both the corpus and the income of the estate. Therefore, the court held that the legislative history cited above does not control the treatment of administration expenses.

In *Ballantine,* a decision that is binding on this court, the court rejected the executors' argument that the term "claims" as used in the legislative history referred to debts and excluded administration expenses. Specifically, the court held that there was no "logical basis for such a narrow construction" and that "[t]he reason for including the one applies to the other." *Ballantine,* 293 F.2d at 313 (citation omitted). Thus, the majority's adoption of the Tax Court's interpretation of the legislative history contravenes binding circuit precedent setting forth what I believe is the more logical interpretation.

IV.

In sum, the precedent set forth in *Alston* and *Ballantine* should be followed in this case. As a consequence, the Tax Court's judgment in favor of the estate should be reversed.

Although state law in this case allows administration expenses to be paid out of income earned by the estate during administration, federal law requires the gross estate to be reduced by the amount of the administration expenses, irrespective of the source of the payment.  Accordingly, the marital and charitable deductions should be reduced by the amount of administration expenses that were paid out of income earned by the estate during administration.